Argued and submitted October 18, 2007, affirmed March 19, petition for review denied June 18, 2008 (344 Or 671)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ALISHA DAWN MYERS,
*Defendant-Appellant.*

Curry County Circuit Court
03CR0167; A124541

180 P3d 759

Andy Simrin argued the cause and filed the brief for appellant.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant was convicted of aggravated murder (as well as several other crimes that are not relevant to this appeal) and sentenced to a term of life imprisonment without the possibility of release or parole. ORS 163.095; ORS 163.105. She appeals, assigning error only to the sentence. She argues that the statute authorizing her sentence violates Article I, section 40, of the Oregon Constitution because, under that provision, the only two sentences for aggravated murder that the legislature has the authority to enact are death and life imprisonment *with* the possibility of release or parole. We affirm.

■ The dispute in this case is clear. Article I, section 40, a constitutional amendment enacted by initiative in 1984 as Ballot Measure 6, provides:

> "Notwithstanding sections 15 and 16 of this Article, the penalty for aggravated murder as defined by law shall be death upon unanimous jury findings as provided by law and otherwise shall be *life imprisonment with minimum sentence as provided by law.*"

(Emphasis added.) At the time Measure 6 was passed, the only "sentence[s] * * * provided by law" for aggravated murder included the possibility of parole after a specified minimum term of incarceration if the state board of parole determined that "the prisoner is likely to be rehabilitated within a reasonable period of time." ORS 163.105(3) (1981). Such sentences are now called "ordinary life" sentences. *State v. Wille*, 317 Or 487, 503, 858 P2d 128 (1993).

■ In 1989, five years after Measure 6 was passed, the legislature created a second nondeath sentence for aggravated murder: "life imprisonment without the possibility of release or parole," ORS 163.105(1)(a), commonly called "true life," *Wille*, 317 Or at 503. That is the sentence that defendant received in this case. The gist of defendant's argument is that the phrase "minimum sentence as provided by law" in Article I, section 40, means "minimum sentence *such as the one now provided by law as of 1984;*" that is, a specified period of incarceration necessarily followed by the opportunity for release or parole. The gist of the state's argument is

that the phrase "minimum sentence as provided by law" means "minimum sentence as *the legislature or the people by initiative may* provide by law," and that the legislature has, in fact, provided by law a contingent minimum sentence: the natural life of the prisoner.

We cannot resolve the dispute between the state and defendant by reference to the text of Article I, section 40. Defendant argues that the state's interpretation of Article I, section 40, would be plausible if the provision read "life imprisonment with *a* minimum sentence *that shall be* provided by law." The state, for its part, argues that defendant's interpretation would be plausible if the provision read "life imprisonment with *the* minimum sentence *as now* provided by law." The parties are both correct; either of the suggested roads not taken would have avoided ambiguity. However, neither road *was* taken, and the ambiguity remains.

Nor does the context help. The context of an initiated constitutional amendment includes other relevant constitutional provisions, Supreme Court case law, related ballot measures submitted to the voters at the same election, and any relevant statutory framework in effect at the time that the voters adopted the provision. *Martin v. City of Tigard*, 335 Or 444, 451, 72 P3d 619 (2003); *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994). The only relevant constitutional provisions are Article I, sections 15 and 16. At the time that section 40 was enacted, section 15 declared, "Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice"; section 16 prohibited cruel, unusual, and disproportionate punishments. However, section 40 begins by stating that it applies "[n]otwithstanding sections 15 and 16 of this Article." Further, it is unclear how the sections would clarify the disputed language. The Supreme Court has held, for example, that a true life sentence does not violate sections 15 or 16. *Tuel v. Gladden*, 234 Or 1, 7-9, 379 P2d 553 (1963). As context for section 40, neither provision eliminates ambiguity.

Article I, section 40, was presented to the voters in the same election as a companion initiative, Ballot Measure

7. That measure enacted a statute imposing the death penalty for aggravated murder and, as an alternative, ordinary life—life imprisonment with 30 years minimum and a parole hearing after 20. Defendant argues that, by simultaneously enacting Measures 6 and 7, the voters clearly intended to limit penalties for aggravated murder to death and ordinary life. The state counters by pointing out that Measure 7 amended the existing ordinary life sentence by eliminating the possibility of a 20-year minimum with a parole hearing after 15 years; that change, the state argues, demonstrates that the voters understood that, under Measure 6, nondeath penalties for aggravated murder were not fixed and could be changed by statute. Again, each party's suggestion is plausible; the simultaneous enactment of Measures 6 and 7 provides persuasive arguments for both sides and, therefore, conclusive arguments for neither.

Finally, we turn to the relevant statutory framework at the time that Article I, section 40, was enacted. ORS 163.105 (1983) mandated minimum sentences for aggravated murder:

> "(1)   When a defendant is convicted of [aggravated] murder * * * pursuant to ORS 163.095(1), the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of [release or parole].

> "(2)   When a defendant is convicted of [aggravated] murder * * * pursuant to ORS 163.095(2), the court shall order that the defendant shall be confined for a minimum of 20 years without possibility of [release or parole]."

The word "minimum" in this statute referred to a period of time during which a prisoner could *not* be released on parole. The term operated to limit the discretion of the parole board, which, under ORS 144.050 (1984), set a prisoner's actual term of incarceration within statutorily mandated maximums. That fact seriously undercuts defendant's argument that the term "minimum sentence" in Article I, section 40, implies a minimum period of incarceration necessarily followed by eligibility for release or parole. More likely, the term signaled an intention to *limit* the availability of release or parole and carried no implication that release or parole was constitutionally mandated.

That reading finds support in the official explanatory statement that was part of the Measure 6 ballot title, appearing immediately before the measure's text. That statement told voters that

> "Article I, section 15 requires that the laws for punishment of crime shall be founded on principles of reformation and not vindictive justice; Article I, section 16 prohibits cruel, unusual, and disproportionate punishments. The measure would exempt aggravated murder statutes requiring the death penalty on unanimous jury findings from these constitutional guarantees. Where death was not imposed, the penalty would remain life imprisonment *with a mandatory minimum provided by statute.*"

(Emphasis added.) Likewise, the first item in the voter's pamphlet after the text, an "explanation" drafted by a committee composed of two members appointed by the Secretary of State, two members appointed by the chief petitioners, and a fifth member appointed by the other four, informed voters, "If the death penalty is not imposed by the jury for aggravated murder, the penalty shall be life imprisonment *with a minimum sentence to be set by statute.*" Both of these explanations use the indefinite article "a" to modify "minimum sentence," indicating that the minimum sentence is undetermined or unspecified. *State v. Hankins*, 342 Or 258, 263, 151 P3d 149 (2007); *Galfano v. KTVL-TV*, 196 Or App 425, 437 n 11, 102 P3d 766 (2004). More significantly, the chief petitioners approved a statement informing the voters that the measure would authorize minimum sentences "to be set by statute." That phraseology can be reconciled only with an intent to refer to *future* action by the legislature.

■     In sum, we conclude that the text of Article I, section 40, is ambiguous with respect to whether it authorizes the legislature to enact a statute imposing a true life sanction for aggravated murder. The ambiguity is not dispelled by the constitutional context, simultaneously enacted measures, the existing statutory framework, or voter's pamphlet, although the latter two sources point indecisively toward the conclusion that defendant's interpretation, while plausible, is considerably less plausible than the state's. Further, we are

aware of no maxims of construction that would alter that conclusion.

Affirmed.