EGAN, C. J.
 

 Petitioner appeals from an amended judgment denying post-conviction relief. In 2003, when she was 18 years old, petitioner was charged with eight felony counts in connection with the death of a single victim. After a bench trial and sentencing proceeding, petitioner was convicted on all counts and sentenced to life in prison without the possibility of parole. Petitioner appeals from the post-conviction court's denial of her petition for post-conviction relief. Her chief contention on appeal is that she did not validly waive her constitutional right to a jury trial in the criminal proceeding; petitioner concludes that her conviction is thus void under the Post-Conviction Hearing Act, specifically, ORS 138.530 (1)(a).
 
 [1]
 
 In light of the post-conviction court's factual findings, we conclude that petitioner's waiver of her right to a jury trial was voluntary and, consequently, valid. Accordingly, we affirm. We reject without discussion petitioner's second and third assignments of error.
 

 We review a post-conviction court's denial of relief for legal error.
 
 Sullivan v. Popoff
 
 ,
 
 274 Or. App. 222
 
 , 230,
 
 360 P.3d 625
 
 (2015),
 
 rev. den.
 
 ,
 
 358 Or. 833
 
 ,
 
 370 P.3d 504
 
 (2016). We "are bound by the post-conviction court's findings of historical fact if those findings are supported by the evidence in the record."
 

 Id.
 

 "If the post-conviction court failed to make findings of fact on all the issues-and there is evidence from which such facts could be decided more than one way-we will presume that the facts were decided consistently with the post-conviction court's conclusions of law."
 
 Green v. Franke
 
 ,
 
 357 Or. 301
 
 , 312,
 
 350 P.3d 188
 
 (2015). Thus, we begin by laying out the relevant facts consistent with the post-conviction court's findings.
 

 Petitioner was charged with four counts of aggravated murder, ORS 163.095, and one count each of felony murder, ORS 163.115, robbery in the first degree,
 ORS 164.415, burglary in the first degree, ORS 164.225, and unauthorized use of a vehicle, ORS 164.135. All the charges involved a single victim. After being charged, petitioner engaged in plea negotiations with the state. During those negotiations, petitioner spoke with the judge presiding over her pretrial hearings. He told her that "[i]f [she] did not take a plea bargain that he could almost guarantee that it would be bad and that [she] would probably, more than likely get the death penalty."
 

 At some point after that discussion with the judge, petitioner accepted the state's offer to refrain from seeking the death penalty in exchange for petitioner's agreement to waive her jury right in both the guilt and penalty phases of her trial. On January 30, 2004, petitioner, in front of her attorney, executed a written jury waiver that stated:
 


 ORS 138.530(1)(a) provides that post-conviction relief shall be granted if the petitioner establishes
 

 "[a] substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void."
 



 "I, the Defendant in the above entitled criminal proceeding, having been heretofore fully informed of all my several constitutional rights, including my right to a Jury Trial, and being well aware of my
 right thereto, do hereby knowingly waive (give up) my right to a Jury Trial and I do so freely and voluntarily without any threat, promise, or other form of coercion."
 

 That waiver was submitted to the court along with a letter from Dr. Larsen, a psychiatrist who had evaluated petitioner. Larsen wrote that, in his "medical psychiatric opinion[, petitioner] meets the minimum standard to aid and assist in her own defense and understands the nature of the charges and potential penalties levied against her."
 

 On March 22, 2004, at the beginning of petitioner's trial, petitioner engaged in a colloquy with the trial judge, a different judge from the one who presided over the pretrial hearings. The trial judge noted that a waiver of jury trial had been filed and asked petitioner's attorney, whether that was still petitioner's decision. This colloquy followed:
 

 "[DEFENSE COUNSEL]: Yes, Your Honor. We would ask that the Court inquire, make the appropriate inquiries of [defendant] and it is our desire that the entire trial be tried before the court sitting without a jury.
 

 "I have explained to [defendant] that she's constitutionally and statutorily entitled to a jury. I have advanced the
 opinion to her as her lawyer that it is in her best interest that we be trying it without a jury and she has agreed but I would appreciate inquiry into both points.
 

 "THE COURT: Okay.
 

 "[Defendant], I know there was-from discussions with the attorneys there was significant opportunity for [defense counsel] to talk to you before you signed this document back in January and I assume-and you've had opportunities since then to talk to [defense counsel] further, is that a fair statement?
 

 "THE DEFENDANT: Yes.
 

 "THE COURT: Okay. And I'm sure [defense counsel] explained and I would again state, you do have an absolute right to a jury trial if that is your decision and that's on all aspects of this matter. And because of the charges that would be a jury which would first hear evidence and make a determination as to whether you were not guilty or guilty of the Aggravated Murder charges and then the other charges and then, if, in fact, they found you guilty on the Aggravated Murder the jury would be making a decision as to what penalty would be imposed.
 

 "And in this matter the [state's attorneys] had indicated that they would not be seeking on the Aggravated Murder a death penalty sentence if, in fact, you were waiving a jury. And so that was part of the agreement that the death penalty is not going to be an issue.
 

 "So do you understand all of that?
 

 "THE DEFENDANT: Yes.
 

 "THE COURT: And is it, after consultation with [defense counsel], is it still your decision to proceed on this matter without a jury where I would be making the decisions as to whether or not beyond a reasonable doubt you committed any of these crimes and then if, in fact, you did commit the crimes and one of the decisions was you committed the aggravated murders, then I would be making a decision as to what sentence would be imposed. And the two sentences in that regard would be a life sentence without the possibility of parole or a life sentence with a possibility of parole after you had served thirty years.
 

 "And so is that still your decision?
 

 "THE DEFENDANT: Yes.
 

 "THE COURT: Okay. Then is the State satisfied with that discussion with [defendant]?
 

 "[THE STATE]: Yes, Your Honor. Thank you.
 

 "THE COURT: [Defense counsel]?
 

 "[DEFENSE COUNSEL]: Yes, I'm satisfied. Thank you.
 

 "THE COURT: Then the matter would proceed as a non-jury matter, the written waiver. I would also-I think the record should reflect that there was documentation that a psychologist or psychiatrist who had examined and met with [defendant] was of an opinion that [defendant] was capable, mentally capable and of-in other words, there weren't any issues as far as signing the waiver of jury trial.
 

 "[DEFENSE COUNSEL]: May I address that issue, Your Honor?
 

 "THE COURT: Yes, sir.
 

 "[DEFENSE COUNSEL]: Yes, Your Honor. I specifically asked that Dr. Jerry Larsen who is a psychiatrist in this state and who had visited with [defendant] on two or three previous occasions, visit her once more. I particularly needed to ascertain whether he was certain one, that she was competent to assist in her own defense and by the same token was competent to exercise that judgment to waive a jury. In his professional opinion as he indicated to you - or indicated to me and passed on to you - it was his opinion that she was competent to do those things.
 

 "And I, myself, as her attorney, as a lay person in that area, feel she was competent to do, Your Honor.
 

 "THE COURT: Okay. Then the matter would, as I indicated, proceed."
 

 The court accordingly proceeded with a bench trial. The court found petitioner guilty beyond a reasonable doubt on Counts 1 through 5 and proceeded to the sentencing phase. Petitioner's attorney handed the court an additional waiver of jury, signed by petitioner and her attorney, which stated:
 

 "I, [defendant], being informed of my rights particularly with respect to my right to a jury sentencing proceeding, and not acting pursuant to any promises or threats by any person, do hereby freely, voluntarily and knowingly waive the right to a jury sentencing proceeding pursuant to ORS 163.150(3)(a)(B) and the right to a jury trial pursuant to the 6th Amendment of the U.S. Constitution, and Article I, § 11 of the OR Const.
 

 "I acknowledge and agree that I have discussed this waiver with my attorneys and that I understand my right to a jury sentencing proceeding and freely, voluntarily and knowingly waive the right to a jury sentencing proceeding in this case."
 

 The following colloquy ensued:
 

 "[DEFENSE COUNSEL]: I'm handing you an additional waiver of jury for the second aspect of this trial. It's the decision of the defense that that was not necessary. However, the position of the State was that it was necessary thus we are acquiescing. And if you would like to make inquiry of [defendant] we will put her acquiescence on the record.
 

 "THE COURT: I'm-with my prior discussion with [defendant] prior to starting the proceedings and then with this one signed by her and witnessed by you I don't feel further inquiry is necessary.
 

 "[DEFENSE COUNSEL]: Thank you."
 

 Before announcing its sentence, the court commented that petitioner's childhood was "certainly a childhood which we would wish no one to have to endure." Indeed, throughout petitioner's life leading up to her crime, she, her parents, and her extended family had experienced significant and ongoing substance abuse and mental health issues, and petitioner had suffered significant physical, emotional, and sexual abuse. Nonetheless, ultimately, the court determined that a sentence of life imprisonment without the possibility of parole or release was appropriate. Petitioner appealed that sentence, and we affirmed in
 
 State v. Myers
 
 ,
 
 218 Or. App. 635
 
 ,
 
 180 P.3d 759
 
 ,
 
 rev. den.
 
 ,
 
 344 Or. 671
 
 ,
 
 189 P.3d 26
 
 (2008).
 

 Petitioner sought post-conviction relief on several grounds. As pertinent to this appeal, petitioner claimed that
 she was coerced by the pretrial judge to agree to a bench trial, rendering her waiver invalid. Specifically, petitioner alleged that she was
 

 "told by the [pretrial judge] that he would guarantee the death penalty for the Petitioner if she insisted upon a jury trial. This Judge stated to the Petitioner that she would die, if she insisted upon a jury trial. The Petitioner was intimidated and only because of the judge's influence did she agree to a court trial."
 

 Defendant, the superintendent of Coffee Creek Correctional Institution,
 
 [2]
 
 responded that petitioner had failed to provide any evidence of coercion and argued that the record demonstrates that petitioner voluntarily
 agreed to waive her right to a jury pursuant to the agreement that the state would refrain from seeking the death penalty. In her deposition with the state regarding her claim for post-conviction relief, petitioner testified:
 

 "I can't remember specifically what he said, but he told me that he could almost guarantee that I would get the death penalty and asked me if that's what I wanted. Did I want to sit on death row. And him being a judge, you know, it scared me."
 

 Petitioner further testified that, "being young and not knowing a whole lot about what was going on I was scared and I guess you could say they were really intimidating about it." The post-conviction court credited petitioner's testimony; it found that the judge had told petitioner that, "in his opinion, a jury would certainly return a death sentence."
 

 After a hearing, the post-conviction court denied petitioner relief on all claims. On appeal, we reversed and remanded on the ground that the post-conviction court's judgment failed to comply with ORS 138.640(1) ; as a result, we did not address petitioner's substantive argument.
 
 Myers v. Brockamp
 
 ,
 
 271 Or. App. 716
 
 ,
 
 353 P.3d 1
 
 (2015). On remand, the post-conviction court entered a more detailed judgment. As relevant to this appeal, the court determined that there was
 

 "5. Insufficient proof of coercion by [the pretrial judge]. He told pet[itioner] that in his opinion, a jury would certainly return a death sentence. It was appropriate for the court to be sure pet[itioner] understood the reality of her situation. Pet[itioner] testified in her deposition that she knew she had the choice of court or jury. One fact that influenced the choice was the DA taking death off the table if she went court. It does not appear that pet[itioner] was incapable of making her own decision since she turned down a plea offer, that her [mother] and her attorney urged her to take.
 

 "* * * * *
 

 "7. Pet[itioner's] waiver of jury was knowing and voluntary. She signed a waiver, her attorney discussed the matter with [her] and the court inquired. At no time did she indicate to anyone any confusion. Clearly, she knew that the waiver meant the DA would not seek the death penalty. The DA's case was extremely strong. Conviction was highly likely. The choice benefitted pet[itioner]."
 

 On appeal, petitioner assigns error to the post-conviction court's denial of her claim for relief regarding her jury trial waiver.
 
 See
 
 ORS 138.530(1)(a). Petitioner argues that the post-conviction court erred in concluding that her waiver was voluntary and not a product of coercion. The state first responds that petitioner's arguments are barred because they exceed the scope of the claim that she pleaded in her petition for post-conviction relief. We reject that argument. Suffice it to say, petitioner's arguments are "directly traceable" to the claim raised in the post-conviction petition.
 
 See
 

 Abbott v. Baldwin
 
 ,
 
 178 Or. App. 289
 
 , 296,
 
 36 P.3d 516
 
 (2001),
 
 rev. den.
 
 ,
 
 334 Or. 75
 
 ,
 
 45 P.3d 449
 
 ,
 
 cert. den.
 
 ,
 
 537 U.S. 901
 
 ,
 
 123 S.Ct. 217
 
 ,
 
 154 L.Ed.2d 174
 
 (2002).
 

 Petitioner first argues that because she introduced a transcript of the colloquy of the waiver in question, the burden of proof shifted to the state to show that the waiver was valid.
 
 [3]
 
 However, here, even assuming,
 without deciding,
 that the state assumed the burden of proof after petitioner provided a transcript of her colloquy that was "silent" on the issue of voluntariness, we conclude that the state met its burden. As explained below, the evidence in the record supports the post-conviction court's findings regarding petitioner's waiver, and those findings show that the waiver was voluntary, that is, not coerced by the judge's statement.
 

 Turning to the merits, petitioner contends, regardless of allocation of the burden of proof, that the post-conviction court erred in determining that her jury waiver was valid under Article I, section 11, of the Oregon Constitution
 
 [4]
 
 and the Sixth Amendment to the United States Constitution.
 
 [5]
 
 We understand petitioner to essentially reiterate the argument that she made to the post-conviction court: that she was coerced into waiving her right to a jury trial when the pretrial judge, in discussing the state's settlement offer, said that he could almost guarantee that a jury would impose the death penalty. Petitioner relies on
 
 United States v. Jackson
 
 ,
 
 390 U.S. 570
 
 ,
 
 88 S.Ct. 1209
 
 ,
 
 20 L.Ed.2d 138
 
 (1968), to stand for her proposition that a waiver of a constitutional right in exchange solely for immunity from the death penalty is an involuntary waiver. Petitioner further argues that, because the trial court (1) did not specifically ask her whether she was making the decision to waive her jury right voluntarily and (2) only asked her three leading questions to which petitioner responded with the single word, "Yes," the trial court failed to ensure that her waiver was not the product of coercion. The state responds that
 
 Jackson
 
 does not stand for petitioner's proposition and argues that
 
 United States v. Brady
 
 ,
 
 397 U.S. 742
 
 ,
 
 90 S.Ct. 1463
 
 ,
 
 25 L.Ed.2d 747
 
 (1970), makes it clear that
 
 Jackson
 
 did not hold that a waiver in exchange for avoiding the death penalty is necessarily invalid. Furthermore, the state contends that the record as a whole demonstrates that petitioner's waiver was voluntary, that is, that it was not coerced. The state argues that petitioner was given a "frank assessment of the likely outcome of a trial before a jury"-an assessment that a jury trial would likely result in a guilty verdict and imposition of the death penalty.
 

 We reiterate that our review of a judgment in a post-conviction case is limited "to questions of law appearing on the record." ORS 138.105(2). This case, however, presents us with an obligation to carry out "our duty to interpret constitutional standards and require conformance thereto."
 
 See
 

 Ball v. Gladden
 
 ,
 
 250 Or. 485
 
 , 488,
 
 443 P.2d 621
 
 (1968) (explaining that whether historical facts are sufficient to sustain a finding of voluntariness of a criminal confession is separate from ordinary factual findings). In so doing, we are bound by the post-conviction court's determination of voluntariness only if the historical facts upon which that finding is based are sufficient to meet constitutional standards.
 

 Id.
 


 at 487-88
 
 ,
 
 443 P.2d 621
 
 .
 

 We begin with the parties' arguments regarding
 
 Jackson
 
 and
 
 Brady
 
 . In
 
 Jackson
 
 , the United States Supreme Court invalidated a provision of a federal statute authorizing the death penalty only if a defendant invoked his or her right to a jury trial.
 
 Jackson
 
 ,
 
 390 U.S. at 581
 
 ,
 
 88 S.Ct. 1209
 
 . The court explained:
 

 "Under the Federal Kidnaping Act, * * * the defendant who abandons the right to contest his guilt before a jury is assured that he cannot be executed; the defendant ingenuous enough to seek a jury acquittal stands forewarned that, if the jury finds him guilty and does not wish to spare his life, he will die."
 



 Id.
 

 The court reasoned that, "[i]f the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional."
 

 Id.
 


 at 582
 
 ,
 
 88 S.Ct. 1209
 
 . The court noted, however, that the statute was enacted with the legitimate "goal of limiting the death penalty to cases in which a jury recommends it."
 

 Id.
 

 Only because that goal could "be achieved without penalizing those defendants who plead not guilty and demand jury trial" did the court hold that the provision "needlessly penalize[d] the assertion of a constitutional right."
 

 Id.
 


 at 583
 
 ,
 
 88 S.Ct. 1209
 
 . The court explained:
 

 "[T]he evil in the federal statute is not that it necessarily
 
 coerces
 
 guilty pleas and jury waivers but simply that it needlessly
 
 encourages
 
 them. A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right. Thus the fact that the Federal Kidnaping Act tends to discourage defendants from insisting upon their innocence and demanding trial by jury hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily."
 



 Id.
 

 (emphases in original).
 

 In
 
 Brady
 
 , the defendant contended "that
 
 Jackson
 
 requires the invalidation of every plea of guilty entered under [the Federal Kidnaping Act], at least when the fear of death is shown to have been a factor in the plea."
 
 397 U.S. at 746
 
 ,
 
 90 S.Ct. 1463
 
 . The court stated that the defendant "read far too much" into
 
 Jackson
 
 and clarified that "
 
 Jackson
 
 ruled neither that all pleas of guilty encouraged by the fear of a possible death sentence are involuntary pleas nor that such encouraged pleas are invalid whether involuntary or not."
 

 Id.
 


 at 746-47
 
 ,
 
 90 S.Ct. 1463
 
 . Furthermore, the court explained that
 
 Jackson
 
 "neither fashioned a new standard for judging the validity of guilty pleas nor mandated a new application of the test theretofore
 fashioned by courts and since reiterated that guilty pleas are valid if both 'voluntary' and 'intelligent.' "
 

 Id.
 


 at 747
 
 ,
 
 90 S.Ct. 1463
 
 .
 

 We agree with the state's reading of
 
 Brady
 
 that a plea of guilty (which includes the waiver of the right to a jury trial), even when encouraged by fear of a possible death sentence, is not inherently invalid. Therefore, in this case, to determine whether petitioner's waiver was valid under the federal and state constitutions, we must examine "the particular facts and circumstances surrounding [petitioner's] case, including the background, experience, and conduct of the accused."
 
 See
 

 Johnson v. Zerbst
 
 ,
 
 304 U.S. 458
 
 , 464,
 
 58 S.Ct. 1019
 
 ,
 
 82 L.Ed. 1461
 
 (1938) (explaining standard for a valid waiver of the right to counsel);
 
 see also
 

 State v. Meyrick
 
 ,
 
 313 Or. 125
 
 , 132,
 
 831 P.2d 666
 
 (1992) ("Whether there has been an intentional relinquishment or abandonment of a known right or privilege will depend on the particular circumstances of each case, including the defendant's age, education, experience, and mental capacity; the charge (whether complicated or simple); the possible defenses available; and other relevant factors."). We focus our inquiry on whether the waiver demonstrates "an intentional relinquishment of a known right or privilege."
 
 State v. Harris
 
 ,
 
 339 Or. 157
 
 , 173,
 
 118 P.3d 236
 
 (2005) (quoting
 
 Johnson
 
 ,
 
 304 U.S. at 464
 
 ,
 
 58 S.Ct. 1019
 
 ). As petitioner appears to contest only the "voluntary" aspect of her waiver, and not the "knowing" aspect, we begin our inquiry there.
 

 Often, our analysis of whether a waiver was "voluntary" overlaps with an analysis of whether it was knowingly and intelligently made.
 
 See
 

 Meyrick
 
 ,
 
 313 Or. at
 
 132 n. 8,
 
 831 P.2d 666
 
 (noting that the standards for a valid waiver are not articulated consistently, as "[a]ppellate courts are prone to substitute additional adjectives and adverbs in stating rules"). However, the Oregon Supreme Court has noted that "voluntary" is within the " 'intentional' component" of a valid
 waiver.
 

 Id.
 

 Thus, whether a waiver was "voluntary" is separable from the "known right" component that refers to a defendant's knowledge and understanding.
 

 Id.
 



 In other contexts, the concept of voluntariness is explained as "an act of free will" or a free and unconstrained choice.
 


 State v. De La Rosa
 
 ,
 
 228 Or. App. 666
 
 , 675,
 
 208 P.3d 1012
 
 (2009) (evaluating whether defendant's consent to search apartment was voluntary);
 
 State v. Flores
 
 ,
 
 280 Or. 273
 
 , 278,
 
 570 P.2d 965
 
 (1977) (evaluating whether defendant's consent to search property was voluntary). Voluntariness is frequently determined by the absence of explicit or implicit coercion.
 
 Meyrick
 
 ,
 
 313 Or. at
 
 132 n. 8,
 
 831 P.2d 666
 
 ("In the absence of some form of coercion, most intentional acts also are voluntary acts.") In order for an act to be rendered "involuntary," a person's will must be "overborne and his [or her] capacity for self-determination critically impaired."
 
 Flores
 
 ,
 
 280 Or. at 278
 
 ,
 
 570 P.2d 965
 
 (quoting
 
 Schneckloth v. Bustamonte
 
 ,
 
 412 U.S. 218
 
 , 225,
 
 93 S.Ct. 2041
 
 ,
 
 36 L.Ed.2d 854
 
 (1973) ).
 

 With those principles in mind, we proceed to our task of reviewing the historical facts found by the post-conviction court to see if they are sufficient to sustain a conclusion that petitioner's jury waiver was voluntary.
 
 Holcomb v. Hill
 
 ,
 
 235 Or. App. 419
 
 , 422,
 
 233 P.3d 448
 
 (2010). As we explain below, we conclude that the record, viewed in the light most favorable to the post-conviction court's resolution of the case, shows that petitioner's waiver of her right to a jury was voluntary.
 

 Petitioner characterizes the pretrial judge's statement that she would likely face the death penalty if she chose a jury trial as a "threat of death" that overbore her will and coerced her into waiving her right. However, the post-conviction court understood it differently. The court found that the pretrial judge was ensuring that petitioner was aware of the "reality of her situation" and that the statement of that reality did not overwhelm or confuse petitioner. The evidence the court cited in making that finding adequately supports it. At her deposition, petitioner testified that she knew she had the choice of a bench trial or jury trial. She discussed the matter with her attorney, and she signed a written waiver in which she explicitly acknowledged that she was waiving her right "freely and voluntarily." Several months passed between petitioner signing the waiver and the colloquy with the trial judge, during which the judge offered her another chance to change her mind. Furthermore, before the state's offer at issue in this case, petitioner had rejected a previous plea offer by the state, demonstrating her ability to make independent decisions regarding her case.
 

 Petitioner's decision to waive her right to a jury trial may have been affected by the fear of facing the death penalty, but the record, viewed consistently with the post-conviction court's findings, does not indicate that the pretrial judge's statements impaired her capacity for self-determination or overbore her free will. To the contrary, the facts demonstrate that petitioner was able to rationally and independently weigh the decision of whether to accept the state's offer to take the death penalty off the table in exchange for her waiver. The court scrutinized petitioner's circumstances, including her history of mental health and substance abuse issues and her age when she entered her waiver. Petitioner was evaluated by a psychiatrist who opined that she was capable of making the decision on her own, and petitioner has not explained why her age, background, or life experiences rendered her decision an "involuntary" one. Petitioner is correct that the judge did not ask her directly whether her waiver was "voluntary." However, given that a colloquy is not constitutionally required for a valid jury trial waiver, that oversight alone does not outweigh the record supporting a finding of voluntariness.
 
 [6]
 

 See
 

 State v. Wigglesworth
 
 ,
 
 186 Or. App. 374
 
 , 378,
 
 63 P.3d 1185
 
 (2003) (holding that, under Article I, section 11, "a trial court that receives a written jury waiver from a represented defendant is not required to inquire whether the defendant's waiver was voluntary"). In sum, the historical facts on the record are legally sufficient to support the post-conviction court's determination of voluntariness.
 

 Affirmed.
 


 In the remainder of this opinion, we refer to defendant Howton as the "state" for ease of reference.
 
 See
 

 Richardson v. Belleque
 
 ,
 
 362 Or. 236
 
 , 238 n. 1,
 
 406 P.3d 1074
 
 (2017).
 



 Petitioner characterizes that colloquy as being "silent" on the issue of voluntariness, and thus concludes that it is silent on the issue of validity. Generally, in post-conviction proceedings, the burden is upon the petitioner to prove the allegations of his or her petition by a preponderance of the evidence.
 
 Montez v. Czerniak
 
 ,
 
 355 Or. 1
 
 , 15,
 
 322 P.3d 487
 
 (2014) ;
 
 Boag v. State of Oregon
 
 ,
 
 44 Or. App. 99
 
 , 101,
 
 605 P.2d 304
 
 (1980) ; ORS 138.620(2). The burden of proof is allocated that way because we recognize a presumption of regularity respecting criminal convictions that are unappealed or that have become final after appeal.
 
 State v. Probst
 
 ,
 
 339 Or. 612
 
 , 628,
 
 124 P.3d 1237
 
 (2005) (citing
 
 Schram v. Gladden
 
 ,
 
 250 Or. 603
 
 , 605,
 
 444 P.2d 6
 
 (1968) ). However, "a valid waiver of constitutional rights will not be found" from a silent record, and if the record is silent as to the validity of a waiver, "[t]he state must prove either a valid waiver or that petitioner had knowledge of his rights."
 
 Boag
 
 ,
 
 44 Or. App. at 101
 
 ,
 
 605 P.2d 304
 
 . For example, the state assumes the burden of proof if a petitioner waived the constitutional right to counsel and the court's record is silent on whether the petitioner did so knowingly.
 
 Miller v. Gladden
 
 ,
 
 249 Or. 51
 
 , 54,
 
 437 P.2d 119
 
 (1968) ("If a knowing waiver is not shown by the court's records, and petitioner testifies he had no knowledge of his right to be represented, the burden is upon the state to prove circumstances from which the post-conviction trial judge can and is willing to infer that petitioner had knowledge of this right.");
 
 See also
 

 Stelts vs. State
 
 ,
 
 299 Or. 252
 
 , 256-57,
 
 701 P.2d 1047
 
 (1985) (defendant did not have to establish "prejudice" to obtain post-conviction relief after pleading guilty without knowledge of his constitutional right). In sum, we exercise extreme caution with waivers of constitutional rights and, in the event that we are presented with a record silent on the issue of validity, we presume a waiver is invalid.
 



 Article I, section 11, provides, in part:
 

 "In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * * provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing[.]"
 



 The Sixth Amendment provides, in part:
 

 "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]"
 



 We agree with petitioner that, when a court endeavors to have a colloquy to ensure that constitutional rights are being intentionally and knowingly relinquished, leading questions are not the most effective manner of doing so. As the Supreme Court has noted,
 

 "[a] criminal trial setting can be an intimidating and frightening place. Leading questions put to a defendant may be answered in the affirmative without actual understanding."
 


 Meyrick
 
 ,
 
 313 Or. at
 
 133 n. 9,
 
 831 P.2d 666
 
 . Indeed, this case would have been a good opportunity for the court to exercise one "method of ensuring that a defendant understands the information given by the court," that is, by having "the defendant repeat the essence of the information or explain his or her understanding of it to the court."
 

 Id.
 

 However, the trial court's failure to follow that suggestion is not a basis for reversal.
 

 Id.