Submitted January 21, affirmed October 7, 2015, petition for review denied March 24, 2016 (358 Or 833)

JAMES LANE SULLIVAN,
*Petitioner-Appellant,*

*v.*

Christine POPOFF,
Superintendent,
South Fork Forest Camp,
*Defendant-Respondent.*

Tillamook County Circuit Court
112039; A152080

360 P3d 625

Ryan O'Connor filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael S. Shin, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and Flynn, Judge, and De Muniz, Senior Judge.

LAGESEN, P. J.

De Muniz, S. J., concurring.

**LAGESEN, P. J.**

The question on appeal in this post-conviction case is whether, in deciding not to raise a hearsay objection to certain testimony at petitioner's criminal trial, petitioner's trial counsel failed to exercise reasonable professional skill and judgment and, if so, whether that failure prejudiced petitioner. We conclude, as did the post-conviction court, that trial counsel's decision-making process, and his handling of the testimony that petitioner identifies as objectionable, was well within the range of reasonable approaches available to a lawyer in trial counsel's position. Accordingly, we affirm the post-conviction court's judgment denying the petition for post-conviction relief.

## I. FACTS

Evaluating petitioner's post-conviction claim requires an understanding of the events underlying petitioner's prosecution, the defense and prosecution theories at trial, and the evidence presented at trial. It also requires an understanding of the parameters of petitioner's post-conviction claim. Here are those facts.

A. *The Fight*

Petitioner's conviction arose out of a fight he had with the victim—Caudillo—outside of a bar. Petitioner was at the bar with his brother and his girlfriend. Caudillo was dropped off at the tavern after spending most of the evening celebrating his twenty-fifth high school reunion at the house of some of his former classmates; he thought that some of his friends would be at the bar. When Caudillo entered the bar, he and petitioner, who knew each other from high school, recognized and acknowledged each other—primarily through gestures, because of the noise level in the bar—but did not carry on any significant conversation. Caudillo indicated to petitioner that petitioner should come outside if he wanted to talk to him. Caudillo did not see any of his friends at the bar, and he left almost immediately after he arrived. Petitioner followed Caudillo out of the bar and around the corner of the building.

Britt, who was standing outside talking with her friend Stephens and some other people, saw the two men

leave the bar and walk around the corner of the building. As they passed her, Britt heard petitioner ask Caudillo if Caudillo had any weed. About two minutes after petitioner and Caudillo had gone around the corner, Britt jumped around the corner to surprise them. Britt expected to discover the two men smoking weed. Instead, she saw petitioner kicking Caudillo, who was on the ground on all fours. Petitioner kicked Caudillo three or four times in the stomach. Britt yelled at petitioner to stop with each kick, but petitioner did not stop. Caudillo managed to stand up. Upon standing, Caudillo was shaken and disoriented and did not attempt to fight petitioner. Petitioner nonetheless grabbed Caudillo by the back of the head and slammed him into the cement. Britt heard the sound of bone cracking as Caudillo hit the pavement. Britt ran back around the corner and into the bar to find a bouncer for assistance.

When Britt ran past to look for a bouncer, Stephens went around the corner. Stephens saw petitioner kick Caudillo in the face while Caudillo was on the ground trying to get to his knees. Stephens ran in to break up the fight by grabbing petitioner and pulling him back hard; Stephens yelled for someone to contact police. Petitioner did not fight Stephens, but told Stephens that Caudillo had "started it." Stephens held onto petitioner until the bouncers came out, at which point Stephens let go of petitioner and let the bouncers hold onto him. Stephens then went to check on Caudillo, who was gurgling and "couldn't really understand much." As a result of the fight, Caudillo was hospitalized for three days, and required significant treatment for injuries to his head and face. The fight also left Caudillo with injuries to his hands and knees. Petitioner suffered a puncture wound to his hand, and sought medical treatment for that wound, but did not seek medical treatment for any other injuries.[1]

Senior Officer Collingham was dispatched to the bar to respond to the fight. When he arrived, numerous people were standing outside. One of the bouncers was holding petitioner against a car. When the bouncer told Collingham

---

[1] Apart from the wound to his hand, petitioner escaped the fight with no other visible injuries, although petitioner testified at his trial that he had some bumps on his head from the fight.

that the bouncer had the "aggressor," Collingham put petitioner "into handcuffs and told him he was being detained until I straightened things out." Collingham tried to talk to Caudillo, but Caudillo was "incoherent." Collingham then canvassed the crowd, seeking witnesses to the fight. He located Britt and Stephens, but found no one who had seen the start of the fight, and he was unable to determine "who the initial aggressor was or [who] started it."

## B. *The Trial*

For his role in the altercation, the state charged petitioner with one count of first-degree assault and one count of second-degree assault. Petitioner raised the defense of self-defense, and, because petitioner did not deny that he had engaged in the conduct on which the assault charges were predicated, the issue at trial was whether the state had disproved petitioner's claim of self-defense beyond a reasonable doubt. The witnesses at the trial were Caudillo, petitioner, Britt, Stephens, Collingham, Norris (the bar manager), and petitioner's brother. Caudillo testified that he had been fairly intoxicated and did not remember much of the incident, but that petitioner had started the altercation by attacking him from behind. Although Caudillo remembered his interaction with petitioner in the bar, and remembered telling petitioner that petitioner should come outside if he wanted to talk, Caudillo testified that he had been unaware that petitioner had followed him out of the bar.

Petitioner testified that Caudillo had started the altercation by coming at petitioner after they rounded the corner. According to petitioner, he had followed Caudillo out of the building thinking that they were going to smoke weed. Petitioner explained that he responded to Caudillo the way that he did because he did not know why Caudillo attacked him and also did not know if Caudillo had a weapon. However, petitioner also admitted that he could have walked away from the fight at several different points in time, including the point in time that Britt observed petitioner kicking Caudillo while petitioner was standing and Caudillo was down on his hands and knees, and the time Stephens observed petitioner kick Caudillo in the face while Caudillo was on the ground. Although petitioner testified on

direct examination that he had "never had a situation like this before," on cross-examination, petitioner admitted that he had been convicted in Iowa as a result of another bar fight.[2]

Britt and Stephens recounted what they had seen petitioner do to Caudillo after Britt had jumped around the corner. Norris testified that she had seen petitioner and Caudillo communicating with each other across the bar. Although she could not understand what they were saying because of the noise, nothing she saw at the time caused her to think that the two would start fighting. Petitioner's brother testified that petitioner had been in a good mood that night and that there was no reason that petitioner would have started a fight with Caudillo.

Pertinent to the issues in this appeal, Collingham recounted the course of his investigation on the night of the fight. In particular, Collingham testified that, soon after arriving on the scene, he handcuffed petitioner upon being told that petitioner was the "aggressor": "When the bouncer told me he had the aggressor, his words, because all of the people and the commotion, I placed [petitioner] into handcuffs and told him he was being detained until I straightened things out." Petitioner's trial lawyer did not object to Collingham's testimony that the bouncer had described petitioner as "the aggressor." On cross-examination, however, petitioner's trial counsel elicited testimony from Collingham confirming that Britt and Stephens were the only witnesses to the altercation that Collingham had found, that there were no witnesses to the start of the fight, and that Collingham was unable to determine who the initial aggressor had been.

In closing argument, the state argued that the jury should find that petitioner was not acting in self-defense for two, alternative reasons. The state first argued that the jury should credit Caudillo's testimony and find that petitioner was the initial aggressor. The state argued further that, even if the jury doubted that petitioner was the initial aggressor, it should have no doubt that petitioner's

---

[2] The trial court concluded that petitioner opened the door to the admission of his prior conviction for the purpose of impeachment after petitioner testified that he had never been involved in a similar situation.

responsive use of force was too excessive to qualify as self-defense, which requires that defensive force be reasonable under the circumstances. In support of its argument that defendant's use of force was not reasonable under the circumstances, the state pointed to the evidence that petitioner kept attacking Caudillo even after it should have been clear to petitioner that Caudillo had been disabled and that petitioner could walk away from him.

The defense theory of the case, as articulated in closing arguments, was that the state could not—and had not—proved beyond a reasonable doubt that petitioner's actions were not in self-defense, as it was required to do. The defense emphasized the evidence that no one, save petitioner and Caudillo, had witnessed the beginning of the altercation, arguing that that created reasonable doubt as to how the fight had started. The defense contended further that, given the uncertainty as to how the fight began, as well as how quickly the fight transpired, the jury could not find beyond a reasonable doubt that petitioner employed a degree of force against Caudillo that petitioner did not reasonably believe was necessary.

The jury convicted petitioner of both counts of assault, which were merged into a single conviction for first-degree assault as a result of petitioner's direct appeal. *State v. Sullivan*, 234 Or App 38, 227 P3d 1186, *adh'd to as modified on recons*, 235 Or App 177, 230 P3d 100 (2010). The trial court sentenced petitioner to 90 months' incarceration on that conviction.

C.   *The Post-Conviction Proceedings*

Petitioner petitioned for post-conviction relief, seeking to set aside his conviction on the ground that his trial counsel's representation did not meet constitutional standards. Among other things, petitioner alleged that his right to counsel under Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution was violated when his trial counsel did not object, move to strike, and request a mistrial in response to Collingham's "hearsay" testimony that, when he arrived on the scene, he put petitioner in handcuffs while he "straightened things out" because the bouncer had said

that petitioner was the "aggressor." The petition alleged that Collingham's testimony about the bouncer's statement was "inadmissible hearsay" under OEC 801 and OEC 802, and that trial counsel was inadequate and ineffective for permitting that hearsay to be admitted:

"On the following claim, petitioner alleges that trial counsel's acts and omissions were not the product of an acceptable tactical decision and counsel's performance fell below an objective standard of reasonableness for defense counsel in similar felony criminal proceedings under the then prevailing professional norms.

"(1)   Trial counsel failed to object, move to strike and move for a mistrial to the hearsay testimony of [Collingham] indicating that petitioner was the aggressor in his altercation with the alleged victim as follows:

"'A.   When I arrived, there were numerous people outside—outside the front doors and on the side of the building. I had walked—got out of my car and walked up. The bouncer had a subject, [petitioner], had him up against a car. They were not fighting. I also saw Mr. Caudillo leaning against a wall—in a seated position, but leaning against a wall nearby.'

"'Q.   And what did you do?'

"'A.   When the bouncer told me he had the aggressor, his words, because all of the people and the commotion, I placed [petitioner] into handcuffs and told him he was being detained until I straightened things out.'

"At trial petitioner presented a theory that the alleged victim had lured him outside a bar and suddenly attacked him such that his use of force against the victim was justified as self defense. The testimony of Collingham was inadmissible hearsay under OEC 801 and 802 et. seq. This testimony was unfairly prejudicial because, if believed, it specifically negated petitioner's theory of defense."

In response to that allegation, defendant submitted an affidavit from petitioner's trial lawyer. In the affidavit, the lawyer explained:

"Petitioner has raised a claim that I failed to object to inadmissible hearsay. I saw no reasonable likelihood of success in objecting to the statement by [Collingham].

Witnesses Stephens and Britt were subpoenaed and present at trial. From pretrial discovery and investigation, I anticipated that they would testify that while they did not see the incident begin, they saw a good portion of the event and would testify that [p]etitioner was the aggressor and that the victim was not the aggressor from their view point. Additionally, it did not look as if [Collingham] was trying to present hearsay evidence. Rather, he was simply explaining why he took a particular action, i.e., handcuffing and detaining petitioner because he was told petitioner was the aggressor. The hearsay was admissible for its effect upon [Collingham's] subsequent action. I was not certain that [the trial judge] would sustain my objection and if overruled, I would run the risk of the district attorney re-asking the question and the jury hearing that testimony a second time."

The post-conviction court credited trial counsel's explanation for not objecting to Collingham's testimony and concluded that petitioner's claim was "not meritorious." The court explained:

"After reading the transcript and hearing the arguments of the parties it is clear to the Court that the bouncer's statement to [Collingham] was admissible. It clearly showed the effect on the listener. [Collingham went] to contact [petitioner] because of that statement. [Trial counsel] in his affidavit * * * discusses that he felt that the statements were admissible and objecting to them would [have] highlight[ed] the statements to the jury. [Trial counsel] was correct. [Trial counsel] was not inadequate for not objecting to the Collingham testimony referencing the bouncer's statement."

The court also rejected the other grounds for post-conviction relief alleged by petitioner and entered a general judgment dismissing the petition. Petitioner timely appealed, assigning error to the post-conviction court's conclusion that trial counsel did not render constitutionally inadequate or ineffective assistance of counsel when counsel failed to raise a hearsay objection to Collingham's recitation of the bouncer's statement that the bouncer had "the aggressor." Although petitioner acknowledges in his brief on appeal that, "[i]f the prosecutor responded that the statement was not offered for its truth but instead was offered for its effect

on the listener, Collingham, then the trial court likely would have admitted the evidence as non-hearsay," petitioner nonetheless asserts that trial counsel's failure to raise that largely futile objection was not reasonable because objecting to the testimony would have allowed trial counsel to request a limiting instruction directing the jury to consider that evidence only for its nonhearsay purpose.

## II. STANDARD OF REVIEW

We review the post-conviction court's denial of relief for legal error. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). In conducting that review, we are bound by the post-conviction court's findings of historical fact if those findings are supported by the evidence in the record. *Id.* "If the post-conviction court failed to make findings of fact on all the issues—and there is evidence from which such facts could be decided more than one way—we will presume that the facts were decided consistently with the post-conviction court's conclusions of law." *Id.*

## III. ANALYSIS

Petitioner seeks post-conviction relief from his first-degree assault conviction on the ground that the performance of his trial lawyer did not comport with the standards for performance of criminal defense counsel derived from Article I, section 11,[3] and the Sixth Amendment.[4] Under the Oregon Post-Conviction Relief Act, a petitioner

---

[3] Article I, section 11, states, in relevant part, that, "[i]n all criminal prosecutions, the accused shall have the right *** to be heard by *** counsel." That provision entitles a criminal defendant to a trial lawyer who "exercise[s] reasonable professional skill and judgment" in conducting the defense. *Pereida-Alba v. Coursey*, 356 Or 654, 661, 342 P3d 70 (2015). A trial lawyer's failure to exercise reasonable professional skill and judgment does not, however, result in a violation of Article I, section 11, unless that failure prejudices the criminal defendant. *Id.* at 661-62.

[4] The Sixth Amendment states, in relevant part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right ***to have the Assistance of Counsel for his defence." Like Article I, section 11, the Sixth Amendment entitles a criminal defendant to a trial lawyer who renders "reasonably effective assistance," that is, assistance that meets "an objective standard of reasonableness." *Strickland v. Washington*, 466 US 668, 687-88, 104 S Ct 2052, 80 L Ed 2d 674 (1984). As with Article I, section 11, a trial lawyer's failure to perform in accordance with an objective standard of reasonableness does not result in a violation of the Sixth Amendment unless the lawyer's deficient performance prejudices the defendant. *Pereida-Alba*, 356 Or at 662.

who seeks to invalidate a conviction on that ground bears the burden of proving that the alleged constitutional violation or violations occurred. ORS 138.620(2); *Pereida-Alba v. Coursey*, 356 Or 654, 662, 342 P3d 70 (2015). Therefore, to obtain post-conviction relief on the ground that his trial lawyer's performance did not comport with Article I, section 11, standards, petitioner was required to prove (1) that his lawyer failed to exercise reasonable professional skill and judgment; and (2) that petitioner suffered prejudice as a result. *Pereida-Alba*, 356 Or at 662. Similarly, to obtain post-conviction relief on the ground of a violation of the Sixth Amendment right to counsel, petitioner was required to prove (1) that trial counsel's performance was not objectively reasonable; and (2) that petitioner suffered prejudice as a result.[5]

With regard to trial counsel's performance, both standards require us to evaluate the reasonableness of trial counsel's "skill and judgment" under the circumstances existing at the time of the challenged act or omission, and do not permit us to "second guess" an attorney's handling of a case "with the benefit of hindsight." *Id.* Where a trial lawyer made a "conscious choice" regarding a particular act or omission, we evaluate the reasonableness of that conscious decision under the circumstances that confronted counsel at the time of the decision. *Id.* at 670. Where, however, trial counsel did not make a conscious decision regarding the challenged act or omission, we evaluate whether counsel's failure to make a conscious decision about the matter in question is reasonable under the particular circumstances of the case, examining "among other things, whether the strategy that defense counsel did employ was reasonable, the relationship between the evidence or theory that defense

---

[5] The Oregon Supreme Court has recognized that the state constitutional standard for the adequate assistance of counsel is "functionally equivalent" to the federal standard, notwithstanding the differences between the wording employed by the Oregon Supreme Court to describe the standard under Article I, section 11, and the wording employed by the United States Supreme Court to describe the standard under the Sixth Amendment. *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487 (2014). Given that equivalence, and given that neither party suggests that, on the facts of this case, the different constitutions require different analyses, we treat both claims as requiring the same analysis and will generally employ the Oregon Supreme Court's phrasing of the standard for the balance of this opinion for ease of reading.

counsel failed to consider and the strategy that counsel did pursue, and the extent to which counsel should have been aware of the strategy that petitioner now identifies." *Id.* at 674.

Here, the post-conviction court correctly concluded that petitioner's claim failed at the performance element. Petitioner's specific claim is that trial counsel's failure to raise a hearsay objection to Collingham's testimony that the bouncer had described petitioner as "the aggressor" when Collingham first arrived on the scene violated his constitutional right to the adequate and effective assistance of counsel.[6] As we understand the post-conviction court's ruling, the trial court credited trial counsel's explanation as to why he did not raise a hearsay objection to Collingham's testimony. That is, the post-conviction court found that trial counsel made a conscious decision not to raise a hearsay objection to that testimony. Under *Pereida-Alba* and *Strickland*, the question for us, then, is whether that decision reflects the absence of reasonable professional skill and judgment. In other words, can we say that, in the circumstances that confronted petitioner's trial counsel, no reasonable trial lawyer could make the decision that petitioner's trial counsel, in fact, made?

We cannot. Under the circumstances confronting petitioner's trial counsel at the time, the decision not to advance a hearsay objection fell within the range of reasonable decisions available to a competent trial lawyer. First, even if a hearsay objection to the testimony would have been meritorious, it was not unreasonable for counsel to decide not to raise that objection under the circumstances

---

[6] In his brief on appeal, petitioner also appears to assert that trial counsel was inadequate for not requesting a limiting instruction directing the jury to consider Collingham's testimony about the bouncer's statement for the limited purpose of explaining why Collingham handcuffed petitioner upon arriving on the scene. This argument is not properly before us. Whether trial counsel was inadequate for failing to request a limiting instruction is a distinct issue from whether trial counsel was inadequate for not raising a hearsay objection to Collingham's testimony, and petitioner did not allege any claims in the petition based on trial counsel's failure to request a limiting instruction. A petitioner cannot obtain post-conviction relief on a claim that was not pleaded in the petition (or amended petition). *Leyva-Grave-De-Peralta v. Blacketter*, 232 Or App 441, 448-53, 223 P3d 411 (2009), *rev den*, 348 Or 114 (2010).

that he faced. Trial counsel knew at the time that objecting to Collingham's testimony likely would not prevent the jury from hearing petitioner characterized as the aggressor. Britt and Stephens were under subpoena to testify, and trial counsel knew from the discovery that both of those witnesses were likely to characterize petitioner as the aggressor based on the portions of the fight that they witnessed. Given that likely eventuality, there was nothing unreasonable about trial counsel's approach to Collingham's testimony. Rather than objecting and moving to strike it (an approach which may have called excess attention to the testimony and may, ultimately, have been unsuccessful), counsel reasonably could choose to rebut any inference that the bouncer's statement meant that petitioner was the *initial* aggressor through cross-examination of Collingham and the examination of Britt and Stephens. And that is exactly what counsel did. In other words, this is not a case in which trial counsel ignored the potential risk posed by Collingham's recitation of the bouncer's out-of-court statement; it is a case in which trial counsel took an approach to that risk that is different from the approach that petitioner, in hindsight, believes that counsel should have taken.

Moreover, as trial counsel recognized, raising a hearsay objection to Collingham's testimony carried with it a risk: that the objection would be overruled on the basis that the testimony was not offered for its truth and, thus, was not hearsay, and that, as a result, the prosecutor would be permitted to ask Collingham about the bouncer's statement again, emphasizing that statement for the jury. Trial counsel's decision not to raise a hearsay objection in the light of that risk, which had a good chance of being realized, was reasonable. Petitioner expressly acknowledges in his brief on appeal that Collingham's testimony about the bouncer's statement likely would have been admissible over a hearsay objection if offered to demonstrate its effect on the listener. That acknowledgment is consistent with OEC 801. Under the rule's plain terms,[7] Collingham's testimony about

---

[7] Hearsay evidence includes any out-of-court statement "*offered to prove* the truth of the matter asserted," OEC 801(3) (emphasis added), and is inadmissible in court, OEC 802. By the text of the rule, the hearsay or nonhearsay character of a statement is determined by the purpose for which it is offered. *See* Laird C.

the bouncer's statement would not be hearsay if offered to explain why Collingham had handcuffed petitioner almost immediately after arriving on the scene, before conducting any meaningful investigation. And it was not unreasonable for trial counsel to think that the prosecutor would be able to counter any hearsay objection successfully by asserting that the evidence was not offered for its truth, but for the nonhearsay purpose of explaining Collingham's conduct, given that it was plainly probative as to why Collingham handcuffed defendant before conducting any significant investigation.

Having concluded that petitioner's state and federal claims of inadequate and ineffective assistance of counsel fail at the performance element, we do not address whether the alleged deficiency in trial counsel's performance prejudiced petitioner.

Affirmed.

**DE MUNIZ, S. J.,** concurring.

The majority correctly characterizes petitioner's post-conviction claim, "that trial counsel's failure to raise a hearsay objection to Collingham's testimony that the bouncer had described petitioner as the 'aggressor' when Collingham first arrived on the scene violated his constitutional right to the adequate and effective assistance of counsel." 274 Or App at 232. I concur in the majority's answer to that specific claim and the judgment. I write separately to comment on two issues regarding the admissibility and the consideration by a jury of out-of-court statements—like the statement admitted here—not offered to prove the truth of the matter asserted.

_____

Kirkpatrick, *Oregon Evidence* § 801.01[3][d], 702 (6th ed 2013) ("A statement is hearsay only if offered for its truth."); *see also* G. Michael Fenner, *The Hearsay Rule*, 147 n 167 (3d ed 2013) ("A statement's hearsay status is determined by the issue to which the evidence is offered."). Thus, if an out-of-court statement is offered not to prove the truth of the matter, but for some other purpose, it is not hearsay and therefore not excluded by OEC 801 and OEC 802. *See* 2 *McCormick on Evidence* § 249, 543, 545-48 (7th ed 2013) (discussing FRE 801, which defines hearsay as an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement," and explaining that, "[i]f the statement is not * * * offered to prove the facts asserted, it is not hearsay").

The first issue has to do with the *relevance* of the so-called effect-on-the-listener statements. Every statement has an effect on the mind of those who hear it; therefore, there is always an argument to be made that an out-of-court effect-on-the-listener statement is admissible because it qualifies as "not hearsay." However, an out-of-court statement is not hearsay only if it is (a) *relevant*, and (b) offered to show the statement's effect upon the listener's state of mind. Laird C. Kirkpatrick, *Oregon Evidence* § 801.01[3][d], 705 (6th ed 2013); *see, e.g., State v. West*, 145 Or App 322, 325, 930 P2d 858 (1996) (police officer could testify to instruction given by another officer to show the instruction's effect on defendant); *see also State v. Hren*, 237 Or App 605, 607, 241 P3d 1168 (2010) ("Statements that are relevant to show their effect on a listener are not hearsay."). Stated another way, an out-of-court statement may be offered to show that the making of that statement had some effect on the person who heard the statement if that person's state of mind is relevant to an issue in the case. *See State v. Thomas*, 167 Or App 80, 83-84, 1 P3d 1058 (2000) (trial court erred in excluding as hearsay witness's out-of-court statement offered to prove the effect on the defendant, one of the listeners). Not every out-of-court effect-on-the-listener statement is relevant to an issue in a case. For example, a police officer's state of mind is seldom relevant to an issue in a criminal case. Thus, when dealing with so-called "effect-on-the-listener," or state-of-mind statements, the question, "Is it relevant?" is just as important as the question, "Is it hearsay?" G. Michael Fenner, *The Hearsay Rule* 331-32 (3d ed 2013).

The second issue involves a jury's consideration of out-of-court statements offered not for the truth of the content of the statement. Generally, out-of-court statements—like the one admitted in this case, purportedly to show the statement's effect on the listener's state of mind—are not substantive evidence of the truth of any facts contained in the statement, and a jury should be instructed on the limited use of that evidence. *See State v. Derryberry*, 270 Or 482, 528 P2d 1034 (1974) (trial court erred in admitting witness's prior inconsistent statement as evidence of the truth of matter asserted in the statement, rather than solely for impeachment purposes).

In petitioner's trial, the jury was not instructed that the bouncer's identification of petitioner as the aggressor could not be considered for the truth of whether petitioner was the aggressor as the state claimed or acted in self-defense as petitioner claimed. Stated another way, the jury was never instructed that it could consider Collingham's testimony about the bouncer's statement only for the purpose of explaining why Collingham handcuffed petitioner upon arriving at the scene, and could not consider the statement as substantive evidence supporting the state's claim that petitioner was the aggressor and did not act in self-defense. *See State v. Goodwin*, 136 Or App 356, 361, 902 P2d 131 (1995), *rev den*, 322 Or 490 (1996) ("Although defendant argues that * * * impeachment evidence cannot be viewed as substantive evidence, she did not object to that evidence and, in the absence of an objection, the jury was not limited in how it could consider the evidence.").

Although, as the majority correctly concludes, the failure to give such an instruction in this case is not before us, I would note that, in the appropriate context, neither the state nor the defendant should overlook the importance of an instruction properly limiting a jury's consideration of a witness's out-of-court statement not admitted for the truth of facts contained in the statement.