Argued and submitted August 7, 2018, affirmed July 15, 2020

TONISA MARIA TORRES,
*Petitioner-Appellant,*

*v.*

Rob PERSSON,
Superintendent,
Coffee Creek Correctional Facility,
*Defendant-Respondent.*

Washington County Circuit Court
16CV42145; A166028

471 P3d 119

Petitioner appeals a judgment denying her post-conviction relief related to her allegations that she received constitutionally inadequate and ineffective counsel at trial. At trial, petitioner was convicted of robbery in the first degree and unauthorized use of a vehicle after the state alleged that petitioner had aided and abetted her husband in committing those crimes. On appeal, petitioner argues that the post-conviction court erred in denying her relief. Specifically, she argues that she was prejudiced by her counsel's failure to request two jury instructions that explained that a person's mere presence at the scene of a crime or acquiescence to a crime is insufficient to establish that the person has aided and abetted the commission of a crime. The superintendent contends that those instructions were not necessary and, even if they were, petitioner was not prejudiced by counsel's failure to request them. *Held*: The post-conviction court did not err. Petitioner did not meet her burden of establishing that her trial counsel was deficient because she did not establish that all counsel exercising reasonable professional skill and judgment would have requested the instructions under the circumstances of petitioner's trial.

Affirmed.

Linda Louise Bergman, Senior Judge.

Jason E. Thompson argued the cause for appellant. Also on the brief was Ferder Casebeer French & Thompson, LLP.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.*

_____
* DeVore, J., *vice* Hadlock, J. pro tempore.

DeHOOG, P. J.

Affirmed.

**DeHOOG, P. J.**

Petitioner appeals a judgment denying her post-conviction relief related to her allegations that she received constitutionally inadequate and ineffective counsel at trial. In the underlying prosecution, a jury found petitioner guilty of robbery in the first degree and unauthorized use of a vehicle, based, in part, on the state's theory that petitioner had aided and abetted her husband in committing the robbery.[1] Petitioner raises seven assignments of error, each contending that the post-conviction court erred in concluding that she had not established that her trial attorney's performance fell below the constitutional standards. We write only to address petitioner's third and fourth assignments of error, which relate to special jury instructions that petitioner contends her attorney should have requested. The instructions would have told the jury that, in the absence of other evidence, a person's mere presence at the scene of a crime or acquiescence to a crime is insufficient to establish that the person has aided and abetted the commission of a crime. According to petitioner, all attorneys exercising reasonable professional skill and judgment would have requested those instructions; petitioner further contends that she was prejudiced by her attorney's failure to request them here. The superintendent responds that those instructions were not necessary under the circumstances and that, even if counsel should have requested them, petitioner was not prejudiced by counsel's failure to do so. We conclude that petitioner has not established that trial counsel's performance was constitutionally deficient. Accordingly, we affirm the post-conviction court's judgment rejecting her claims.

"We review the grant or denial of post-conviction relief for legal error. In doing so, we accept the post-conviction court's express and implicit findings of fact if there is evidence in the record to support them." *Rudnitskyy v. State of Oregon*, 303 Or App 549, 550, 464 P3d 471 (2020) (internal quotation marks, citation, and brackets omitted). We state the relevant facts accordingly.

Petitioner's charges arose from an incident in which her husband, Aguirre, returned home after midnight and

---

[1] Petitioner was also convicted of unlawful possession of methamphetamine.

robbed a man, M, who was there at petitioner's invitation. Petitioner and Aguirre had met M weeks earlier at a local bar. Without telling Aguirre or M's girlfriend, petitioner and M had developed a relationship of some kind. According to M, the relationship was largely one-sided, as petitioner would call him repeatedly, asking him to go out drinking and gambling. Whatever the true nature of their relationship, it was undisputed that the two socialized to some degree in the weeks preceding the robbery.

During that time, petitioner's resources were limited because her vehicle had recently been damaged in a crash, leaving her without personal transportation, and she was awaiting a substantial payment to which she was periodically entitled. M, on the other hand, had at least some resources. He drove his girlfriend's car and was paid $500 in cash each week, which he carried in his wallet. Their relationship reflected that disparity. For example, on one occasion, M drove petitioner to a casino, where the two of them gambled solely with M's money. And, on another occasion, petitioner called M from the hospital, after which he drove her home and lent her money to pay for a prescription.

On the night of the robbery, petitioner invited M to have drinks at her apartment because it was too late to go to a bar. M asked about petitioner's husband several times, but petitioner assured him that she and Aguirre had separated and that he had gone to California. When M pressed further, petitioner told him that she had confirmed with Aguirre's sisters that he was in California with them.

After M arrived, the two sat outside petitioner's apartment for about five minutes, where they had a drink and smoked cigarettes. Petitioner then suggested that M get some music from his car so that they could listen to it in her apartment. M went to his car as suggested. When M returned to petitioner's apartment, he noticed that she was texting someone on a cellphone.

For a brief time after that, petitioner and M sat separately in a room near the front door, having a drink and listening to music. Within five minutes, however, Aguirre entered the apartment unannounced and locked the door behind him. Aguirre was wearing gloves. Petitioner asked

Aguirre how he had gotten into the apartment, but, according to M, she did not appear alarmed and remained seated on a couch smoking a cigarette. Aguirre removed a gun from behind his back and put it to M's head.[2] Aguirre told M to empty his pockets onto the couch and then, even though M complied with his demand, struck him on the head with the gun. Aguirre also demanded that M give him his car keys and, at some point, pulled out a large knife and held it to M's ribs.

M testified that Aguirre finally relented when petitioner told Aguirre to "'let him go'" and "'leave him.'" According to M, Aguirre then took his phone so that he could not call the police and told him to get out of the apartment. M left the apartment, but immediately headed to a nearby grocery store to seek help. On the way there, he saw the car that he had left at petitioner's apartment drive by. Because the car had tinted windows, he was unable to say who was driving or how many people were in the car. The car was located two days later, but, by then, its tires and rims were different, its stereo had been removed, and M's possessions were gone.

At petitioner's criminal trial, the state's theory was that she had aided and abetted Aguirre in robbing M and stealing his girlfriend's car and, therefore, was guilty of robbery in the first degree and unauthorized use of a vehicle. Specifically, the prosecution argued that petitioner had been involved in the planning of both crimes and had invited M to the apartment that night under the pretext that Aguirre was out of state, after which she had texted Aguirre to let him know that M had arrived. Unlike it did with regard to petitioner's presence when Aguirre robbed M, the state put on no evidence connecting petitioner with the victim's car after the robbery.[3] The only apparent evidence of petitioner's

---

[2] Although M believed at the time that Aguirre's gun was real, it was later determined that it had more likely been a pellet gun.

[3] In support of another assignment of error, petitioner suggests that the prosecution put on additional evidence that, if believed, could support an inference that she had been involved with the unauthorized use of M's vehicle after the robbery took place. Petitioner does not cite anything in the record to support that contention, which, in any event, has no bearing on our analysis of her third and fourth assignments of error.

post-robbery conduct was Aguirre's testimony that petitioner had stayed home when he drove off with the stolen car.

In light of the state's theory that petitioner was liable for Aguirre's conduct, the trial court instructed the jury on aiding and abetting as follows:

"A person who is involved in committing a crime may be charged and convicted of that crime if, with intent to promote or facilitate commission of the crime, that person aids and abets someone in committing the crime. Under these circumstances it is not necessary for that person to be personally present at the time and place of the commission of the crime.

"A person aids or abets another person in the commission of a crime if the person: (1) with intent to promote or make easier the commission of the crime; (2) encourages, procures, advise[s] or assist[s] by act or advice the planning or commission of the crime.

"A person acts intentionally or with intent when the person acts with a conscious objective to cause a particular result or to engage in particular conduct. When used [in the phrase ']with intent to promote or make easier the commission of a crime[,' ']intentionally or with intent[']] means that a person acts with a conscious objective to promote or make [it] easier for another person to commit [a] crime by encouraging, procuring, advising or assisting * * * the planning or commission of the crime.

"For criminal liability[,] Oregon law requires the performance of a voluntary act or omission. An act is a bodily movement. A voluntary act is a voluntary movement performed consciously. An omission is a failure to perform an act, the performance of which is required by law."

The jury returned unanimous verdicts finding petitioner guilty on all counts. We affirmed petitioner's convictions on direct appeal without written opinion, and the Supreme Court denied review. *State v. Torres*, 274 Or App 859, 364 P3d 1012 (2015), *rev den*, 358 Or 551 (2016). This post-conviction proceeding followed. With respect to petitioner's third and fourth assignments of error, the post-conviction court concluded:

"Petitioner faults trial attorney for not requesting these instructions. If requested, they would have been proper and a court would have given them, but they were not necessary. The entire case, from both sides[,] was whether or not petitioner planned the robbery and lured the victim to the scene so that her husband could rob him. All of the evidence was about her actions before her husband came into the apartment with a gun and knife and demanded money and the car keys. The DA never argued that she *** was guilty because she just sat there when it happened or that she rode in or used the stolen car after the robbery. All of the testimony and arguments concerned planning. The failure to request them was not inadequate representation and there was no prejudice."

As noted, petitioner raises seven assignments of error on appeal, of which we write to address two—petitioner's third and fourth assignments of error—and reject the others without substantial discussion.[4] In petitioner's third assignment of error, she argues that, pursuant to *State v. Moriarty*, 87 Or App 465, 468, 742 P2d 704, *rev den*, 304 Or 547 (1987), trial counsel should have requested a special jury instruction informing the jury that "mere presence" at the scene of a crime is insufficient to constitute aiding and abetting. Similarly, in her fourth assignment of error, petitioner cites *State v. Stark*, 7 Or App 145, 151, 490 P2d 511 (1971), and argues that all competent counsel would have requested a special jury instruction stating that merely acquiescing to the commission of a crime is not sufficient to constitute aiding and abetting. Petitioner argues that, because each of those instructions is a correct statement of law, they would have been given by the trial court if requested, and the absence of each instruction prejudiced petitioner by effectively lowering the bar for conviction.

---

[4] As to two of the remaining assignments of error—petitioner's first and second assignments—she argues that trial counsel was constitutionally deficient in failing to move for judgment of acquittal on the grounds that there was no evidence indicating that petitioner had committed an act or had the necessary intent to aid and abet Aguirre in committing a crime. We agree with the post-conviction court's conclusion that "[t]here was sufficient evidence on both aid and abet and intent so that a judgment of acquittal would have been denied." As a result, petitioner was not prejudiced by the lack of a motion for judgment of acquittal even if petitioner could somehow establish that counsel should have made such a motion on that basis.

The superintendent's response is twofold. First, the superintendent questions the post-conviction court's conclusion that the instructions would have been given if requested. In the superintendent's view, both instructions were unnecessary, and the fact that they were accurately drawn from appellate court decisions did not render them appropriate instructions for the jury. Second, the superintendent asserts that, because the state's theory of the case was not based solely on petitioner's presence or acquiescence in Aguirre's conduct, petitioner suffered no prejudice as a result of her attorney's alleged incompetence. For the reasons that follow, we ultimately agree with the superintendent's argument that trial counsel's decision to forgo requesting special jury instructions was reasonable, and we therefore conclude that the post-conviction court did not err in denying petitioner's inadequate assistance claims.

Before turning to the parties' arguments, we begin with a review of the applicable legal standards. "Post-conviction relief is warranted when there has been a 'substantial denial' of a petitioner's 'rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.'" *Green v. Franke*, 357 Or 301, 311, 350 P3d 188 (2015) (quoting ORS 138.530(1)(a)). "To obtain relief on a claim of inadequate assistance of counsel, petitioner must establish, by a preponderance of the evidence, that [her] trial counsel did not exercise the professional skill and judgment required by Article I, Section 11, [of the Oregon Constitution] and that [she] suffered prejudice as a result."[5] *Rudnitskyy*, 303 Or App at 555-56.

To satisfy the performance prong of an inadequate-assistance claim, "it is not enough to show that the lawyer could or even should have chosen a different course of action;

---

[5] Although petitioner requests relief under both the state and federal constitutions, it is well-settled that the state and federal standards of inadequate and ineffective assistance of counsel are "functionally equivalent." *Jackson v. Franke*, 364 Or 312, 315, 434 P3d 350 (2019); *see also Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014) (same). Because petitioner does not seek relief separately under the two constitutions, we address petitioner's claims under the Oregon Constitution. *Rudnitskyy*, 303 Or App at 556 n 4.

petitioner must show that any reasonable attorney would have taken the steps that petitioner now asserts [her] attorney should have taken." *Id.* at 556. Stated differently, we ask whether, "in the circumstances that confronted petitioner's trial counsel, no reasonable trial lawyer could make the decision that petitioner's trial counsel, in fact, made." *Sullivan v. Popoff*, 274 Or App 222, 232, 360 P3d 625 (2015), *rev den*, 358 Or 833 (2016).

If petitioner satisfies the performance prong, she must also establish that trial counsel's inadequate performance caused her prejudice. The prejudice prong requires petitioner to establish that trial counsel's failure to exercise reasonable professional skill and judgment "had a tendency to affect the result of the trial." *Jackson v. Franke*, 364 Or 312, 316, 434 P3d 350 (2019) (internal quotation marks omitted). A tendency "demands more than mere possibility, but less than probability." *Green*, 357 Or at 322.

We begin with an analysis of the performance prong, which, it turns out, ultimately resolves petitioner's appeal. Whether trial counsel could reasonably have chosen to forgo requesting a particular jury instruction presents us with a question of law that we review based upon the post-conviction record. *Pereida-Alba v. Coursey*, 356 Or 654, 663, 342 P3d 70 (2015). Here, the record includes trial counsel's declaration explaining that decision:

> "I admit that I did not submit these special requested instructions. I chose to rely on the uniform jury instructions given to the jury and my argument to the jury, both of which covered the facts that mere presence at a crime [and] acquiescence alone *** do not constitute a crime in themselves."

Generally speaking, an attorney's tactical decision is "'deserving of considerable deference.'" *Farmer v. Premo*, 363 Or 679, 690, 427 P3d 170 (2018) (quoting *Lichau v. Baldwin*, 333 Or 350, 360, 39 P3d 851 (2002)). However, we will not defer to a lawyer's tactical decision if it reflects "an absence or suspension of professional skill and judgment" or it is not "grounded on a reasonable investigation." *Farmer*, 363 Or at 690 (internal quotation marks omitted). Thus, we must determine whether trial counsel made a reasonable

tactical decision warranting deference when, rather than requesting special jury instructions, he chose to rely on the uniform instructions and argument to inform the jury on the law.

In this case, the post-conviction court's explanation of its ruling, 305 Or App at 471-72, suggests that the court accepted trial counsel's rationale for his decision. True, the post-conviction court agreed with petitioner's contention that, had trial counsel requested the special jury instructions at issue, the trial court would have given them to the jury because they correctly stated the law. The post-conviction court concluded, however, that "they were not necessary." As a result, the post-conviction court ultimately concluded that trial counsel's performance was not inadequate and that petitioner had not been prejudiced by counsel's failure to request the jury instructions. As noted, the superintendent questions the post-conviction court's conclusion that the special jury instructions were appropriate, but agrees that they were unnecessary and that petitioner, therefore, was not prejudiced by their omission. We turn to those issues.

"As a general matter, a party is entitled to a jury instruction on its theory of the case if the requested instruction correctly states the law, is based on the operative pleadings, and is supported by the evidence." *Ossanna v. Nike, Inc.*, 365 Or 196, 212, 445 P3d 281 (2019) (citing *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998)). However, there are qualifications to that rule, some of which apply here. First, a party is not entitled to a requested instruction if the given instructions "adequately address[] the issue." *Ossanna*, 365 Or at 213 (internal quotation marks omitted); *see also State v. Tucker*, 315 Or 321, 332, 845 P2d 904 (1993) ("It is not error for a trial court to refuse to give a requested instruction if the instruction given by the court, although not in the form requested, adequately covers the subject of the requested instruction."). Second, a "court is not required to also provide negative or converse instructions," that is, instructions "describing in what circumstances an element might *not* be established." *State v. Roberts*, 293 Or App 340, 346, 427 P3d 1130 (2018) (internal

quotation marks omitted; emphasis added); *see also Martini v. Beaverton Ins. Agency, Inc.*, 314 Or 200, 213, 838 P2d 1061 (1992) ("[I]f a jury is correctly instructed on those elements that it must find in order to reach an affirmative conclusion, a court need not go further and submit the opposing side's version of various circumstances that would *not* suffice to reach the disputed conclusion." (Emphasis in original; internal quotation marks omitted.)). Finally, instructions "'reasonably capable of confusing or misleading the jury should be avoided.'" *Roberts*, 293 Or App at 346 (quoting *Williams et al. v. Portland Gen. Elec.*, 195 Or 597, 610, 247 P2d 494 (1952)).

Unsurprisingly, petitioner's argument on appeal embraces the post-conviction court's preliminary conclusion that she would have been entitled to both of the special jury instructions if counsel had requested them. Contrary to the court's ultimate conclusion, however, petitioner maintains that counsel was inadequate in failing to request those instructions, because they would have directly supported counsel's trial strategy. The superintendent, in turn, characterizes petitioner's special jury instructions as selectively chosen quotes pulled from appellate-court decisions, which the trial court was under no obligation to give. The superintendent concludes, therefore, that the failure to request the instructions cannot have rendered trial counsel's performance constitutionally inadequate.

As the superintendent correctly points out, the Supreme Court has cautioned trial courts that not "every quote from every opinion should become a required jury instruction." *State v. Nefstad*, 309 Or 523, 551, 789 P2d 1326 (1990). In *Nefstad*, the state introduced evidence of various false statements that the defendant had made to investigating officers; those statements, the prosecution argued at trial, demonstrated the defendant's "consciousness of guilt." *Id*. at 550. In response, the defendant requested the following special jury instruction:

> "Evidence of false explanations by defendant is admissible to show consciousness of guilt. Consciousness of guilt, however, does not constitute affirmative proof as to how the crime was committed or defendant's participation therein."

*Id*. In support of his requested special jury instruction, the defendant in *Nefstad* had cited our decision in *State v. Voit/ Strong,* 12 Or App 520, 532-33, 506 P2d 734 (1973), which, as the Supreme Court noted, did not address jury instructions; rather, the issue in *Voit/Strong* was the sufficiency of the evidence. *Nefstad*, 309 Or at 551 n 16. Although the Supreme Court acknowledged that the proposed special jury instruction accurately paraphrased our opinion in *Voit/ Strong*, it held that the trial court had not erred in declining to give the requested instruction. *Id*. at 551.

The *Nefstad* court explained its reasoning as follows:

"Defendant Nefstad's instruction deals with the inferences that, in defendant's view, may or may not be drawn from his lies. Yet this court has emphasized that '[i]t is the task of the advocate, not the judge, to comment on inferences. *** Inferences when used against the defendant [in a criminal case] should be left to argument without any instruction.' *State v. Rainey,* 298 Or 459, 467, 693 P2d 635 (1985). In this case, because the parties fully presented their differing interpretations of defendant Nefstad's falsehoods to the jury, no instruction was required."

*Id*. at 551-52 (brackets and ellipses in original; footnote omitted). In other words, although the requested instruction correctly identified inferences that the jury could permissibly draw, that issue was most appropriate for argument, not instruction, because it did not present a matter of law requiring an explanation from the court. *Id*. at 551-52 ("The trial court's obligation, in instructing the jurors, is to 'state to them all matters of law necessary for their information in giving their verdict.' ORCP 59 B."). The point of *Nefstad*, therefore, is not that proper jury instructions cannot be gleaned from applicable case law, as the superintendent's argument here could be read to suggest. Rather, the lasting significance of that decision is that it draws a line between issues of law, on which jurors must be instructed, and issues of fact, a matter better left to advocacy.

Indeed, the Supreme Court's recent decision in *Ossanna* emphasizes that a party may, in an appropriate case, be entitled to a requested instruction reflecting a principle of law drawn from relevant appellate decisions. 365

Or at 218; *see also Bray v. American Property Management Corp.*, 164 Or App 134, 142-43, 988 P2d 933 (1999), *rev den*, 330 Or 331 (2000) (holding that it was not error for trial court to give jury technically correct instruction on vicarious liability—one that was unlikely to have created an erroneous perception of the law—even though instruction was not a "model of clarity" and was a simple "cut-and-paste melding" of language pulled from multiple decisions; noting that instruction "exemplifie[d] the caveat that '[a]n instruction that accurately quotes or faithfully paraphrases an appellate decision is not necessarily beyond reproach.' *Rogers v. Meridian Park Hospital*, 307 Or 612, 616, 7[72] P2d 929 (1989)" (first and third brackets added).). Thus, to the extent that the superintendent suggests that trial counsel could never be faulted for failing to seek appropriate instructions drawn from the case law, we disagree. *Cf. Krummacher v. Gierloff*, 290 Or 867, 875, 627 P2d 458 (1981) ("[C]ounsel must investigate the facts and prepare himself on the law to the extent appropriate to the nature and complexity of the case so that he is equipped to advise his client, exercise professional judgment and represent the defendant in an informed manner.").

We turn, therefore, to whether the special jury instructions in this case were correct statements of the law that the trial court would have been required to give if petitioner's trial counsel had requested them. We begin with the suggested "mere presence" instruction, specifically, that "mere presence at a crime is insufficient to establish aiding and abetting." As we will explain, our review of the case law suggests that, although petitioner's suggested instruction may correctly state the law, the trial court may nonetheless have been under no obligation to read it upon counsel's request.

For example, in *State v. Jackson*, the defendant had driven another suspect away from the scene of a robbery that the other man had single-handedly carried out. 64 Or App 667, 669, 669 P2d 826 (1983). On appeal of the defendant's resulting conviction for first-degree robbery, he argued that the trial court had erred when it declined his request to have the jury instructed that "'mere presence at or near the scene of a crime is insufficient evidence upon

which to base a conviction.'" *Id.* at 671. We did not dispute that the requested instruction correctly stated the applicable law. Nonetheless, we held that, "[a]lthough the instruction recite[d] a correct statement of a legal principle, it was properly rejected." *Id.* We reasoned that, because there had been sufficient evidence to submit the case to the jury—which meant that the defendant's presence at or near the crime scene had *not* been the only evidence of his involvement in the robbery—"the requested instruction would [have been] a comment on a portion of the evidence." *Id.* In reaching that conclusion, we implicitly reasoned that, by instructing the jury as the defendant had requested, the trial court would have conveyed its belief that the defendant's presence at the robbery scene was, in fact, the only evidence of his guilt. As a result, the significance of the defendant's presence at or near the scene of the crime was "a matter to be left to oral argument rather than to instruction."[6] *Id.*

Similarly, but for somewhat different reasons, the Supreme Court in the *Nefstad* case discussed above held that the trial court had not erred in declining to instruct the jury that "'[m]ere presence at the scene of a crime *** [is] not sufficient to establish that a defendant committed the crime or aided and abetted the commission of the crime.'" 309 Or at 548. In that case, the trial court had given the jury an aid-and-abet instruction similar to the one given in this case.[7] *Id.* In upholding the defendant's conviction, the Supreme Court reasoned that the requested instruction would not have added anything to the jury's understanding of the law, because the proposed instruction "stated merely the converse of the instructions that were given," under which the jury could not have convicted the defendant if he had merely been present at the scene of the crime. *Id.* at 549.

---

[6] Our precise reasoning in *Jackson* has no direct bearing on the merits of petitioner's post-conviction claim. Accordingly, we express no view as to whether that reasoning would be controlling in other circumstances.

[7] The instruction given by the trial court in *Nefstad* stated:

"'A person aids and abets another person in the commission of a crime if the person charged with intent to promote or make easier the commission of the crime, encourages, procures, advises or assists by act or advice the planning or the commission of the crime.'"

309 Or at 548.

Finally, in *State v. Williams*, the Supreme Court relied on *Nefstad* in upholding the trial court's refusal to instruct the jury that "'mere presence at or near the scene of the crime is insufficient evidence upon which to base a conviction.'" 313 Or 19, 33-34, 828 P2d 1006 (1992) (brackets omitted). As in *Nefstad*, the *Williams* court observed that the "trial court [had] correctly instructed the jury on what it would need to find affirmatively in order to conclude that [the] defendant had aided and abetted in the crimes," and the Supreme Court endorsed the trial court's reasoning that the subject of "mere presence" was an issue for argument rather than instruction. *Id.* at 33. Accordingly, the trial court had not erred, despite the defendant's assertion that even the evidence arguably placing him at the scene of the crime was itself only circumstantial. *Id.* at 34.

Given those precedents, it is far from clear that petitioner would have been entitled to have the court give her "mere presence" instruction to the jury, as the post-conviction court seems to have understood. We need not decide that issue, however, because we conclude that, in light of the existing case law, not all defense counsel exercising reasonable professional skill and judgment would have requested a "mere presence" instruction. As petitioner's trial attorney explained in a declaration submitted to the post-conviction court, he "chose to rely on the uniform jury instructions given to the jury" and his own closing argument, "both of which covered the facts that mere presence at a crime [and] acquiescence alone *** do not constitute a crime in themselves." Given the Supreme Court's reliance on much the same reasoning in decisions considering similar "mere presence" instructions, we cannot conclude that it was an unreasonable tactical decision for trial counsel to forgo requesting one here. Additionally, given that both we and the Supreme Court have held under comparable circumstances that a defendant is not entitled to an instruction of the sort at issue here, we cannot conclude that all reasonable counsel would nonetheless have requested one. For each of those reasons, petitioner has not established that her trial attorney provided inadequate counsel by not requesting a "mere presence" instruction, and, accordingly, we reject petitioner's third assignment of error.

In light of that conclusion, petitioner's fourth assignment of error requires relatively little discussion. As with her third assignment of error, petitioner's fourth assignment concerns trial counsel's failure to request a special jury instruction, specifically, one stating that acquiescence to a crime is, without more, insufficient to support a conviction for that crime. Although the case law discussing jury instructions regarding "acquiescence" (as opposed to "mere presence") is limited, the case law that exists appears to treat the two much the same. Moreover, petitioner offers no substantial argument as to why the two are distinguishable here. Thus, as, briefly discussed below, we decide petitioner's fourth assignment of error on the same basis as we decided her third assignment of error.

Most notably, in *Nefstad*, the Supreme Court upheld a trial court's refusal to instruct the jury that "'the fact that a defendant acquiesced in the criminal acts of another and wished those criminal acts to succeed is not sufficient to make the defendant an aider and abettor or principal or co-conspirator in the crime.'" 309 Or at 547. In rejecting the defendant's argument that the proposed "acquiescence" instruction was required even though the trial court had accurately instructed the jury regarding aid-and-abet liability, the Supreme Court relied on the same rationale that led to its decision that the defendant was not entitled to a "mere presence" instruction. *Id*. at 549. Indeed, the court provided a single explanation—namely, that the defendant's requested instructions were "merely the converse of the instructions that were given" and involved matters better left to argument—before rejecting all three of the defendant's jury instruction arguments. *Id*. at 549-50 (holding, for that reason, that the trial court had not erred in rejecting the defendant's proposed instructions regarding "mere knowledge or acquiescence," "mere presence," and "mere association").[8]

---

[8] We recognize that, in *Nefstad*, the Supreme Court noted that the defendant had focused his argument on the "presence" and "association" instructions, and, as a result, the court focused its own discussion on those concepts. 309 Or at 549-50. We see no indication, however, that the court relied on a distinct rationale when it disposed of the defendant's "acquiescence" argument in the same sentence as his other two. *See id*.

Much like the Supreme Court in *Nefstad*, we see no material difference between the two jury instructions at issue in petitioner's third and fourth assignments of error, even in the unique context of post-conviction relief. That is, for the same reasons that trial counsel reasonably could view the special jury instruction regarding a person's mere presence as unnecessary or unlikely to be given by the trial court, counsel was justified in viewing an acquiescence instruction the same way. In reaching that conclusion, we note that our own case law has, in the context of aid-and-abet liability, treated "presence" and "acquiescence" as closely related concepts. For example, at the time of petitioner's trial, we had repeatedly stated that "[a]lthough 'the least degree of concert or collusion between accomplices suffices' to establish culpability as an aider or abettor, mere presence or acquiescence alone are not sufficient." *State v. Burgess*, 240 Or App 641, 650, 251 P3d 765 (2011), *aff'd*, 352 Or 499, 287 P3d 1093 (2012) (quoting *State ex rel Juv. Dept. v. Holloway*, 102 Or App 553, 557, 795 P2d 589 (1990)); *see also State v. Lavadores*, 230 Or App 163, 171, 214 P3d 86 (2009) (also relying on *Holloway*); *State v. Anlauf*, 164 Or App 672, 674, 995 P2d 547 (2000) (same); *State v. Schrag*, 21 Or App 655, 658, 536 P2d 461 (1975) (both mere presence at a crime scene and acquiescence to the actions of another are insufficient to constitute aiding and abetting). Given the regularity with which we (and the Supreme Court) have treated "mere presence" and "acquiescence" as analytically similar concepts, we see no reason to view trial counsel's similar handling of the related jury instructions as unreasonable. And, therefore, for the same reasons that we rejected petitioner's third assignment of error, we also reject her fourth.

Because petitioner has not met her burden of establishing that counsel's performance was deficient, we need not reach the prejudice prong of our analysis. And, as a result, we affirm the post-conviction court's judgment.

Affirmed.