Argued and submitted February 22 on appeal, judgment on claims 13D and 13E reversed and remanded, otherwise affirmed, on cross-appeal affirmed June 7, petition for review denied November 2, 2023 (371 Or 511)

TRAVIS COLBY CURRY,
*Petitioner-Respondent*
*Cross-Appellant,*

*v.*

Josh HIGHBERGER,
Superintendent,
Oregon State Correctional Institution,
*Defendant-Appellant*
*Cross-Respondent.*

Marion County Circuit Court
19CV11026;
A176592 (Control), A176628

531 P3d 702

In this post-conviction proceeding, the court granted relief on petitioner's claims 13D and 13E on the grounds that at petitioner's 2015 trial, trial counsel was inadequate in failing to (1) move pretrial for an order prohibiting the prosecutor and witnesses from referring to the complainant as the "victim" and (2) object at trial to each instance in which the prosecutor and two witnesses used the word "victim." Defendant, the superintendent of the Oregon State Correctional Institution, appeals from that judgment. Petitioner cross-appeals, assigning error to the post-conviction court's rejection of his four other claims of inadequate assistance of counsel. *Held*: The Court of Appeals summarily rejected the assignments of error raised in petitioner's cross-appeal, concluding, as the post-conviction court did, that petitioner failed to establish that his trial counsel or appellate counsel provided inadequate assistance of counsel as to claims 13G, 13L, 15A, and 18. As to claims 13D and 13E, the court concluded that the post-conviction court erred in determining that petitioner was entitled to post-conviction relief based on trial counsel's failure to object—pretrial and during petitioner's trial—to the prosecutor's and two witnesses' use of the term "victim" when referring to the complainant who suffered multiple knife wounds.

On appeal, judgment on claims 13D and 13E reversed and remanded; otherwise affirmed. On cross-appeal, affirmed.

Patricia A. Sullivan, Senior Judge.

Adam Holbrook, Assistant Attorney General, argued the cause for appellant-cross-respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Jedediah Peterson argued the cause for respondent-cross-appellant. Also on the brief was O'Connor Weber LLC.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

On appeal, judgment on claims 13D and 13E reversed and remanded; otherwise affirmed. On cross-appeal, affirmed.

Aoyagi, P. J., specially concurring.

**JOYCE, J.**

In this post-conviction proceeding, defendant, the superintendent of the Oregon State Correctional Institution, appeals from a judgment granting petitioner post-conviction relief. Petitioner was convicted of first-degree assault in connection with an altercation that resulted in the complainant suffering several knife wounds. Petitioner filed for post-conviction relief, alleging, among other claims, that trial counsel was inadequate and ineffective in failing to (1) move pretrial for an order prohibiting the prosecutor and witnesses from referring to the complainant as the "victim" of a crime and (2) object at trial to each instance in which the prosecutor and two witnesses used the word "victim" when referring to the complainant. The post-conviction court agreed with petitioner and granted post-conviction relief on those grounds. The court rejected petitioner's remaining claims.

The superintendent appeals, arguing that the post-conviction court erred in concluding that trial counsel performed deficiently regarding the "victim" issue (claims 13D and 13E).[1] Petitioner cross-appeals, assigning error to the post-conviction court's rejection of his four other specifications of inadequate assistance of counsel (claims 13G, 13L, claims 15A, and 18). We review the post-conviction court's legal conclusions for legal error. *Waldorf v. Premo*, 301 Or App 572, 573, 457 P3d 298 (2019), *rev den*, 366 Or 451 (2020). We accept the post-conviction court's express and implicit findings of fact if there is evidence in the record to support them. *Id.*

We summarily reject the assignments of error raised in petitioner's cross-appeal, concluding, as the post-conviction court did, that petitioner fails to establish that his trial counsel or appellate counsel provided inadequate assistance of counsel as to claims 13G, 13L, 15A, and 18.

_____

[1] The superintendent also assigns error to the post-conviction court's entering of an amended judgment to correct the reference to petitioner's underlying criminal case number—a clerical error contained in the original general judgment. We agree with petitioner that the post-conviction court properly exercised its authority to correct, on its own motion, a clerical mistake under ORS 19.270(5) and ORCP 71 A. *Yarbrough v. Viewcrest Investments, LLC*, 299 Or App 143, 449 P3d 902 (2019), *rev den*, 366 Or 135 (2020).

As to claims 13D and 13E, we agree with the superintendent that the post-conviction court erred in determining that petitioner was entitled to post-conviction relief based on trial counsel's failure to object—pretrial and during petitioner's trial in 2015—to the prosecutor's and two witnesses' use of the term "victim" when referring to the complainant who suffered multiple knife wounds. Accordingly, we reverse and remand.

## I.   FACTS

The relevant background facts are undisputed. On an evening in 2014, while complainant, RD, was walking in downtown Lebanon, Oregon, he passed by petitioner arguing with his then-girlfriend, Miller, outside a bar. RD saw petitioner get aggressive with Miller; he stepped between petitioner and Miller, trying to help Miller. That intervention soon turned into an altercation between petitioner and RD. During the fight, petitioner pulled out a knife, stabbed RD in the stomach and in the bottom of his rib cage, and cut RD's hand. RD was eventually able to restrain petitioner.

Police subsequently arrested petitioner, and the state charged petitioner with attempted murder and first-degree assault. At petitioner's trial in 2015, the prosecutor referred to RD as a "victim" several times in his opening and closing statements. Additionally, during examination, the prosecutor referred to RD as the "victim" on several occasions while asking questions. There were also five instances when two eyewitnesses referred to RD as the "victim" in their testimony, which we describe in greater detail below. Trial counsel did not object to those descriptions during the trial or move pretrial for an order prohibiting the prosecutor and witnesses from referring to RD as the "victim" of a crime during trial.

Petitioner's defense at trial was that he acted in self-defense and that he lacked the intent to kill or seriously injure RD. A jury convicted petitioner of first-degree assault and acquitted him of attempted murder.

In 2019, petitioner initiated this post-conviction proceeding, alleging that he received inadequate and ineffective assistance of counsel in violation of his rights under Article I,

section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution. As relevant to this appeal, petitioner argued that trial counsel's performance was deficient because trial counsel (1) "failed to move pretrial for an order prohibiting the prosecutor and witnesses to refer to [RD] as the 'victim' of a crime before Petitioner was convicted of a crime"; and (2) "failed to object to, move to strike, then move for a mistrial after the prosecutor and state witnesses referred to [RD] as the 'victim' of a crime before the jury determined that [RD] was a victim and before Petitioner was convicted of a crime."

In support for those claims, petitioner relied primarily on the Supreme Court's decision in *State v. Sperou*, 365 Or 121, 442 P3d 581 (2019), holding that the use of the word "victim" by the state's witnesses amounted to impermissible vouching, when the only evidence that the alleged criminal conduct occurred was from witnesses' testimony, and the defendant's theory of the case was that no crime had occurred.

In response, the superintendent argued that *Sperou* had been decided *after* petitioner's criminal trial and was distinguishable from the facts in petitioner's case, and thus, petitioner's attorney did not fail to exercise reasonable professional skill and judgment by not moving pretrial to prevent the prosecutor and witnesses from referring to RD as the "victim" during trial or objecting during trial to the use of the term "victim" to describe RD.

The post-conviction court granted relief. It noted that although *Sperou* was decided after petitioner's trial took place, that decision "points out the problem with using the term victim when the issue whether some[one] is in fact a victim is central to the case." Because petitioner claimed that he acted in self-defense, the court concluded that "the repeated use of the term 'victim' reinforces the idea that [RD] was not the initial aggressor and that Petitioner was not acting in self-defense," and thus trial counsel was inadequate by not acting—pretrial and again during trial—to prevent the prosecutor and witnesses from using the word "victim" to describe RD. As noted above, the superintendent challenges that ruling.

## II.   ANALYSIS

Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant's right to adequate and effective assistance of counsel. *Antoine v. Taylor*, 368 Or 760, 767, 499 P3d 48 (2021). A violation of such constitutional rights entitles a petitioner to receive post-conviction relief. ORS 138.530(1)(a).

To establish inadequate assistance of counsel, petitioner bears the burden of establishing by a preponderance of the evidence that "counsel failed to exercise reasonable professional skill and judgment, and that the petitioner suffered prejudice as a result of counsel's inadequacy." *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017). Because the state and federal standards are "functionally equivalent" and petitioner does not argue that the two standards should be applied differently in this case, we focus our analysis on petitioner's claim under the Oregon Constitution. *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014).

To determine whether counsel exercised reasonable professional skill and judgment, we "'evaluate a lawyer's conduct from the lawyer's perspective at the time, without the distorting effects of hindsight.'" *Antoine*, 368 Or at 768 (quoting *Lichau v. Baldwin*, 333 Or 350, 360, 39 P3d 851 (2002)); *see also Sullivan v. Popoff*, 274 Or App 222, 231, 360 P3d 625 (2015), *rev den*, 358 Or 833 (2016) (we evaluate the reasonableness of trial counsel's "skill and judgment under the circumstances existing at the time of the challenged act or omission") (internal quotation marks omitted). When a petitioner argues that the attorney's performance was constitutionally deficient because of a failure to present an unsettled legal issue at the time of petitioner's trial, such a theory of inadequate assistance of counsel prevails only if "the state of the law was so obviously ambiguous that any lawyer exercising reasonable professional skill and judgment necessarily would have seen it." *Jackson v. Franke*, 369 Or 422, 434, 507 P3d 222 (2022) (internal quotation marks omitted); *see also Burdge v. Palmateer*, 338 Or 490, 497, 112 P3d 320 (2005) (it was incorrect to "assume that, because a

court eventually recognized a statute's ambiguity, any law-yer exercising reasonable professional skill and judgment would have done the same"); *Montez*, 355 Or at 32 ("Defense counsel cannot be faulted for lacking a crystal ball[.]"). Framed slightly differently, a petitioner must do more than "merely argue that [their] counsel could have made a win-ning argument"; rather, a petitioner must show that "based on the law as it existed at the time of [their] trial, any rea-sonably competent defense attorney would have made the argument." *Hagberg v. Coursey*, 269 Or App 377, 382, 344 P3d 1118, *rev den*, 358 Or 69 (2015).

So framed, the question on appeal is whether peti-tioner established that his counsel failed to exercise reason-able professional skill and judgment, at the time of petition-er's trial in 2015, when he failed to take action pretrial or at trial to prevent the prosecutor and the state witnesses from referring to the complainant as the "victim."

To answer that question, we begin—somewhat counterintuitively—with *Sperou*. Although trial counsel did not have the benefit of that case at the time of petitioner's trial in 2015, because that case formed the basis for the post-conviction court's ruling, and because the question we must answer is whether, in 2015, trial counsel would have made the argument that was ultimately deemed meritori-ous in *Sperou*, we discuss that decision before addressing the question of its foreseeability in 2015.

*Sperou* marked the first time that the Supreme Court expressly set parameters as to when a prosecu-tor's and a state witness's use of the term "victim" at trial would amount to unlawful vouching. There, the defendant was accused of having sexually assaulted the complainant when she was a child. 365 Or at 123. The state disclosed pretrial that it would call the complainant and six other women who would testify to having been sexually abused by the defendant. *Id.* The defendant, who denied that any abuse had occurred, moved pretrial to preclude all parties or witnesses from referring to either the complainant or the other six women as "victims" because to do so would amount to impermissible vouching. *Id.* at 125-26. The trial court denied the motion. *Id.* at 126. At trial, the prosecutor and

witnesses referred to the complainant as the "victim." *Id.* at 127. The state did not present "any physical or eyewitness evidence" corroborating the allegations of the complainant or the other accusers. *Id.*

The defendant appealed, challenging the trial court's denial of his motion to prohibit the use of the term "victim." *Id.* We affirmed without opinion, and the Supreme Court granted review. *Id.*

The Supreme Court reversed and noted that vouching "refers to the expression of one's personal opinion about the credibility of a witness," which may be either overt or subtle. *Id.* at 128. When the statement is subtle, the court emphasized the importance that each statement be considered in the context in which it was made, because "certain statements might be vouching in some contexts but not others." *Id.* Specifically, with respect to the prosecutor's use of the term "victim," the court explained:

> "In light of a prosecutor's dual responsibilities to refrain from inflammatory remarks and personal commentary, on the one hand, but to be an advocate for the state's cause, on the other * * *, [o]ne can imagine situations where such use is meant to convey, improperly, a prosecutor's personal opinion that a witness is credible. But one can readily imagine other situations in which the use of that term is a fair comment on the evidence (*e.g.*, 'we will prove that defendant committed this crime and that [witness] was his victim')."

*Id.* at 135-36. Thus, although the rule against vouching prohibits counsel from expressing personal opinions as to witnesses' credibility, "prosecutors, as advocates for the state's cause, have wide latitude to make *arguments* from the evidence." *Id.* at 130 (emphasis in original). Ultimately, "the propriety of a prosecutor's use of the term 'victim' will depend on the context in which the word is used," and "if context renders the comment inappropriate, the court has discretion to fashion an appropriate remedy, subject to the defendant's right to a fair trial." *Id.* at 136. In *Sperou*, because the defendant's pretrial motion sought to categorically prohibit prosecutorial references to "victim," without an attempt to distinguish between appropriate and inappropriate circumstances of such use, the court concluded that the trial court

acted within its discretion to deny the defendant's pretrial motion with respect to the prosecutor. *Id.* at 137-38.

The court reached a different conclusion with respect to the state's witnesses' use of "victim." Relying primarily on an earlier case, *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010), the court concluded that "the use of the term 'victim' to refer to the complaining witness or other witnesses, in circumstances where the accusers' own testimony is *the only evidence* that the alleged criminal conduct occurred, conveys the speaker's belief that the accusers are credible." *Sperou*, 365 Or at 132 (emphasis added). It further explained that where a defendant denies that any crime occurred, such as in *Sperou*, references to the complaining witness as a "victim" may "undermine the presumption of the defendant's innocence" because it assumes their guilt, a fact that is not proved until the jury finds the defendant guilty. *Id.* at 133. Meanwhile, the court acknowledged the state's argument that a witness's use of the word "victim" was not vouching "could have salience in a case where there is physical evidence corroborating the complaining witness's claims of victimhood, allowing another witness to conclude that the complaining witness is a 'victim' based on evidence other than the complaining witness's allegations." *Id.* at 131.

Thus, it was clear in 2019 that, depending on the context in which the term "victim" is used during a trial, a prosecutor's or witness's use of the term "victim" could amount to improper vouching. The question we now turn to is whether any lawyer exercising reasonable skill and judgment would have objected to the use of that term in petitioner's trial in 2015.

A.  *Failure to Move Pretrial to Prohibit the Prosecutor's Use of the Term "Victim"*

We begin with petitioner's argument that his trial counsel provided inadequate assistance of counsel for failing to move pretrial to prohibit the prosecutor from referring to RD as the victim. Even assuming that, in 2015, counsel should have foreseen the Supreme Court's eventual holding in *Sperou*, under *Sperou*'s reasoning, petitioner's argument fails. In other words, we do not need to assess whether counsel in 2015 should have anticipated *Sperou*

because, as the court explained in *Sperou*, given the range of latitude afforded to prosecutors in terms of advocacy, a pretrial motion categorically prohibiting the prosecutor from referring to the complaining witness as "victim" is too broad. 365 Or at 137. When a pretrial motion failed to "alert the trial court to, the considerations distinguishing a prosecutor's legitimate use of the term 'victim' from uses that are improper," as it would have in this case, under petitioner's argument, the trial court, "in its discretion, could deny [the] motion." *Id.* at 137-38; *see also State v. McConnell*, 308 Or App 29, 35, 479 P3d 1082 (2020) (applying *Sperou*, concluding that the trial court's denial of defendant's motion *in limine* to preclude the prosecutor from using the word "victim" to refer to the complainant was within the range of allowable discretion). And petitioner points to no case that existed at the time of his trial in 2015 that held otherwise. Thus, the post-conviction court erred in ruling that *Sperou* rendered trial counsel's performance constitutionally inadequate for failing to move before trial to prevent the prosecutor from referring to RD as the victim.

B.   *Failure to Move Pretrial to Prohibit Witnesses' Use of the Term "Victim" and to Object to Witnesses and the Prosecutor Using the Term "Victim" during Trial*

At trial, the prosecutor stated in his opening statement that "[RD] is the victim in the case." When he later described the altercation and introduced the state's witnesses, he referred to RD as "victim" five additional times. The prosecutor made similar multiple references in closing argument. During examination, the prosecutor also referred to RD as the "victim" while examining (1) the state's two eyewitnesses, (2) Miller, who, as noted, was petitioner's then girlfriend, (3) Officer Dominy, who interviewed RD at the hospital, (4) Detective McCubbins, who interviewed petitioner during the investigation, and (5) petitioner. Petitioner's trial counsel did not object to any of those descriptions at trial.

With respect to witnesses, Patterson, an eyewitness to part of the altercation, described at trial that he saw petitioner and "the victim" on the ground and that "the victim had some blood coming out of his hand and a knife got thrown through the air." When the prosecutor asked

Patterson where RD went after the fight, he responded, "To the best of my knowledge the victim was about out in this area." Another eyewitness, Poston, testified that after he separated petitioner from RD, "[o]n the victim I saw that his mouth was bleeding," and "the person—the victim, I guess, was standing there spitting at us and cursing at us."

As we understand petitioner's argument and the post-conviction court's conclusions, petitioner asserts that his trial counsel failed to exercise reasonable professional skill and judgment by not acting, both pretrial and at petitioner's trial in 2015, to prohibit any references to the complaining witness as a "victim" in light of the particular nature of petitioner's claim that he acted in self-defense. In petitioner's view, for the same reasons underlying the holding in *Sperou*, by referring to the complaining witness as a "victim" in this case, the prosecutor and witnesses unlawfully vouched for the complainant's credibility and functionally undermined the presumption of petitioner's innocence by casting doubt on his claim of self-defense.

As described above, however, to succeed on his claim that his counsel acted unreasonably, petitioner cannot merely argue that his counsel could have made an argument that would be meritorious under *Sperou*. Petitioner must show that, based on the state of law as it existed at the time of his trial, trial counsel exercising reasonable professional skill and judgment would have made the argument that any references to RD as a "victim" at trial constituted unlawful vouching. *Jackson*, 369 Or at 434.

The state of the law in 2015—and what the *Sperou* court relied on—was *Lupoli*, decided in 2010. In that case, a nurse testified at trial that she had diagnosed the complainant as having been the victim of child sexual abuse. 348 Or at 353. In support of that diagnosis, she stated that the child's responses during a forensic interview were developmentally appropriate for her age, had included "very clear and spontaneous" descriptive details, and were "pretty compelling." *Id.* The court concluded that the nurse improperly vouched for the child's credibility because "given the lack of physical evidence of abuse," the nurse's statement "necessarily was based on her assessment of the child's believability."

*Id.* at 362; *see also State v. Southard*, 347 Or 127, 218 P3d 104 (2009) (a physician's medical diagnosis that alleged child victim had been sexually abused was inadmissible in the absence of any physical evidence of abuse).

For several reasons, we disagree that petitioner's trial counsel, based on the law in 2015, *i.e.*, *Lupoli*, failed to exercise reasonable professional skill and judgment by not objecting to the use of the term "victim" at trial. As an initial matter, with respect to the prosecutor's use of the term, *Lupoli* involved testimony by a *witness*, not a prosecutor; it was only until *Sperou* that the court extended the principles underlying its decision in *Lupoli* to statements made by a prosecutor and in doing so, observed that a prosecutor's use of the term "victim" entails a "qualitatively different" analysis. 365 Or at 137. Further, in *Lupoli*, there was no physical evidence of abuse; thus, there was no physical evidence that the child was a victim. By contrast, in petitioner's case, the state provided physical evidence and eyewitnesses' testimony that RD suffered knife wounds as the result of the altercation with petitioner. In other words, unlike in *Lupoli*, in petitioner's trial, an eyewitness could have concluded that RD was a "victim" based on evidence other than the witness's personal opinions and perceptions. Accordingly, *Lupoli* did not obligate petitioner's trial attorney to object to the prosecutor's and eyewitnesses' use of the term "victim" at trial in 2015 or even suggest that such an objection might be successful. Framed slightly differently, an argument that use of the term "victim" constitutes unlawful vouching—which would turn out to be meritorious in *Sperou* in 2019—was not so obvious under the state of the law in 2015 that "the exercise of reasonable professional skill and judgment obligated attorneys to raise the argument." *Jackson*, 369 Or at 425; *see also Hagberg*, 269 Or App at 387 ("given the state of the law, his own experience in that trial court, and the circumstances of the case," the defense attorney had not performed inadequately despite not raising an objection that later case law deemed meritorious).

Nor did petitioner's self-defense theory make *Lupoli* obviously applicable. As the superintendent notes, the term "victim" can include someone who suffers an injury "either as a result of ruthless design or incidentally or accidentally."

*Webster's Third New Int'l Dictionary* 2550 (unabridged ed 2002). As such, under the state of law in 2015, use of the term "victim" under the particular circumstances of this case would not necessarily amount to a comment on the credibility of the complaining witness's allegation or a comment on whether petitioner had acted in self-defense.

In summary, given that petitioner has not shown that his trial counsel failed to exercise reasonable professional skill and judgment in failing to move pretrial for an order prohibiting the prosecutor and witnesses from referring to RD as the "victim" during trial or object during trial to the eyewitnesses and prosecutor's references to RD as the "victim," he is not entitled to post-conviction relief on those grounds.

On appeal, judgment on claims 13D and 13E reversed and remanded; otherwise affirmed. On cross-appeal, affirmed.

**AOYAGI, P. J.,** specially concurring.

I agree with the majority that the post-conviction court erred in granting post-conviction relief on Claims 13D and 13E, but my reasoning is significantly different from the majority's reasoning, so I write separately.

There are some things that, once you see, you cannot unsee. In my view, the impropriety of persistently referring to the complainant as "the victim" in a criminal trial in which the complainant's victimhood is disputed is something that is so obvious now that it is difficult to imagine it ever having *not* been obvious. Moreover, reading the transcript of defendant's trial, there is little doubt in my mind that the prosecutor crossed the line recognized in *State v. Sperou*, 365 Or 121, 442 P3d 581 (2019). The prosecutor referred to the complainant as "the victim" approximately 30 times in front of the jury, including in his opening statement, while questioning witnesses, and in his closing argument. Indeed, the prosecutor's very first words to the jury in his opening statement were, "Ladies and gentlemen of the jury, welcome back. Now we can talk about the facts. You're going to meet [RD], he is the victim in the case." Throughout trial, the prosecutor regularly reiterated that the complainant was "the victim" in this case. His phrasing of questions also

repeatedly boxed witnesses into acknowledging or referring to the complainant as "the victim."

The majority concludes that, *given the nature of this case*, not all constitutionally adequate defense counsel would have objected or sought to exclude references to the complainant as "the victim." *See* 326 Or App at 270. I disagree with that reasoning. In my view, *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010), put attorneys on notice that, as relevant to vouching in a criminal trial, there is an important distinction between cases in which the complainant's victimhood is disputed and cases in which the dispute is over the identity of the perpetrator. And, unlike the majority, I view this case as falling into the former category.

A child who has been sexually abused is necessarily a "victim," even if the defendant is not the perpetrator. Similarly, in a trial where it is undisputed that the complainant was defrauded, stolen from, or otherwise the victim of a crime—such that the state's case turns on the perpetrator's identity, not the fact of the crime itself—referring to the complainant as "the victim" would not seem to be vouching. An eyewitness might also refer to someone as "the victim" based on what they personally saw, which would not be vouching. This case is different. Here, two adult men had a physical altercation, and the one charged with a crime claimed that he had acted in self-defense. In that context, referring to the complainant as "the victim" necessarily cast him as the victim of a crime committed by defendant, counter to defendant's theory that no crime occurred or that, if one did, the complainant was the perpetrator.

There could be contexts in which calling someone "the victim" might be understood to refer only to a person being physically injured, regardless of how the injury was sustained. A criminal trial in which the defendant is charged with assault and attempted murder and claims self-defense is not one of them. To illustrate the point, realistically, if defendant had been the one physically injured in the altercation, but the jury found that he was the aggressor and guilty of assault, would anyone refer to defendant as "the victim"? Or, if the jury found that the complainant was the aggressor and that defendant acted in self-defense,

resulting in defendant's acquittal, would anyone still refer to the complainant as "the victim"? I think not. Perhaps more importantly, it is obvious on this record that the prosecutor was not using "victim" in a neutral manner.[1]

Physical evidence of an injury is different from physical evidence of *victimhood*, and it is the latter type of evidence that I understand *Lupoli* and *Sperou* to reference. *See Sperou*, 365 Or at 131 (distinguishing between situations where the only basis to conclude that someone is a "victim" is the complaining witness's own statements and situations where "there is physical evidence corroborating the complaining witness's *claims of victimhood*" (emphasis added)); *Lupoli*, 348 Or at 362 (discussing the lack of "physical evidence" in the context of child sexual abuse). I therefore disagree with the majority that the mere fact that the complainant was injured in the altercation with defendant made it less objectionable for the state to continuously refer to him as "the victim." It is important to observe that the majority's reasoning in this case would not seem to be limited to trials that took place before *Sperou* was decided. I can discern no reason that it would not apply equally (or nearly equally) today, if the majority believes that the physical evidence here is the type of physical evidence to which *Lupoli* and *Sperou* refer.

Although I disagree with the majority's reasoning, I ultimately agree with the majority's disposition. That is because, in my view, *Sperou* effected a significant extension of the principle animating *Lupoli*, and not all constitutionally adequate defense counsel would have foreseen that extension in 2015. Two considerations in particular compel me to that conclusion. First, as to the speaker, *Lupoli* is limited to witness testimony, whereas *Sperou* addresses both witness testimony and prosecutorial statements, arguments,

---

[1] Even if the prosecutor had used the term "victim" ambiguously—which is not the case here—it would not follow that we should assume that jurors would have understood that. *Cf. Sperou*, 365 Or at 132 ("The state's contrary argument appears to presume that, even under those circumstances, the jury will understand that the word 'victim' really means 'alleged victim.' It is possible that some jurors will have that understanding some of the time, but we decline to simply assume that that will always be so for all jurors, particularly when jurors are given no instruction regarding the term's legal meaning.").

and questions. *Sperou*, 365 Or at 123; *Lupoli*, 348 Or at 349. Second, as to subject matter, *Lupoli* focuses on witnesses diagnosing children as having been sexually abused and pays no attention to the use of the term "victim,"[2] whereas *Sperou* directly addresses the use of the term "victim" to refer to a complainant. *Sperou*, 365 Or at 123; *Lupoli*, 348 Or at 353. In some ways, *Sperou* goes beyond vouching and, at least as to prosecutors, crosses into concerns about the presumption of innocence.

Post-*Sperou*, the present case is, in my view, *exactly* the type of situation in which constitutionally adequate defense counsel would object to persistent references to the complainant as "the victim," including during witness questioning, as undermining the presumption of innocence and risking depriving the defendant of a fair trial. I cannot say that all constitutionally adequate defense counsel would have made that objection in 2015, however, at least in a case like this one where it was almost entirely the *prosecutor* who was referring to the complainant as "the victim," and where, in context, it is fairly apparent that the witnesses were simply accepting the prosecutor's characterization for purposes of answering his questions (when they were asked a question about "the victim" and answered with the understanding that he meant the complainant) and occasionally repeating his phrasing (the few times that a witness said "the victim" to refer to the complainant), rather than expressing their own views on whether the complainant was "the victim." As difficult as it is to unsee the problem identified in *Sperou*, now that it seems so obvious, we are not to rely on hindsight in assessing counsel's constitutional adequacy in a post-conviction case.

In sum, I agree with the majority that petitioner's trial counsel was not constitutionally deficient—but based on different reasoning from the majority—and that the post-conviction court therefore erred in granting post-conviction

---

[2] It is unclear whether, in *Lupoli*, the witnesses even used the word "victim" in referring to the complainants. *See generally Lupoli*, 348 Or at 349-70. Moreover, the Supreme Court itself repeatedly used the word "victim" to refer to the complainants in *Lupoli*, despite reversing the defendant's convictions, which strongly suggests that the court was not especially sensitive to the use of the term "victim" in 2010. *See id.*

relief on Claims 13D and 13E. I also agree with the majority's disposition of the state's other assignment of error and petitioner's assignments of error. Accordingly, I respectfully concur.