No. 795 November 6, 2024 9

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

DONALD McLAUGHLIN,
*Petitioner-Appellant,*

*v.*

David PEDRO,
Superintendent,

Eastern Oregon Correctional Institution,
*Defendant-Respondent.*
Umatilla County Circuit Court
20CV17899; A180102

J. Burdette Pratt, Judge.

Argued and submitted September 24, 2024.

Mark Kimbrell argued the cause for appellant. Also on the briefs was Michael R. Levine.

Adam Holbrook, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Petitioner appeals a judgment denying his petition for post-conviction relief from convictions for first-degree sodomy, ORS 163.405; first-degree sexual abuse, ORS 163.427; and first-degree unlawful sexual penetration, ORS 163.411 after a jury trial. Petitioner presents four assignments of error. Reviewing for legal error and accepting the post-conviction court's supported implicit and explicit factual findings, *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015), we affirm.

This case relates to sexual assault allegations against petitioner by two people: S and M. After a jury trial that resulted in his convictions, petitioner sought post-conviction relief. He alleged, among other things, that his trial counsel was constitutionally ineffective and inadequate because counsel (1) did not object or move for a mistrial when the trial court made statements during closing arguments that petitioner argues made the court "an advocate for the prosecution"; (2) did not move for the court to instruct the jury that it had to decide each count separately; (3) did not object or move for a mistrial when witnesses and the prosecutor referred to the complainants as "victims"; and (4) failed to elicit testimony that a witness saw M hug petitioner immediately after the sexual assault. In the post-conviction proceeding, petitioner argued that those deficiencies required reversal because they prejudiced him. The post-conviction court denied relief on all claims. Petitioner now appeals that decision.

"Post-conviction relief is warranted when there has been a 'substantial denial' of a petitioner's 'rights under the constitution of the United States, or under the constitution of the State of Oregon, or both, and which denial rendered the conviction void.'" *Delgado-Juarez v. Cain*, 307 Or App 83, 90, 475 P3d 883 (2020) (quoting *Green*, 357 Or at 311). A criminal defendant has a constitutional right to adequate and effective assistance of counsel. *Strickland v. Washington*, 466 US 668, 687, 104 S Ct 2052, 80 L Ed 2d 674 (1984); *Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981). Under Oregon law, a petitioner claiming inadequate assistance of counsel must prove by a preponderance of the

evidence that (1) his trial counsel failed to exercise reasonable professional skill and judgment and that, (2) because of that failure, the petitioner suffered prejudice. *Pereida-Alba v. Coursey*, 356 Or 654, 661-62, 342 P3d 70 (2015); ORS 138.620. The federal standard is similar, requiring that petitioner establish that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Strickland*, 466 US at 687. The state and federal standards are "functionally equivalent."[1] *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487 (2014). With that legal background, we turn to petitioner's assignments of error.

*Closing Argument.* Petitioner argues that his counsel was ineffective for failing to object or move for a mistrial on the ground that, during defense counsel's closing argument, the court "became an advocate for the prosecution." During trial, S and M testified that a witness, Garbowski, saw petitioner sexually assault S and attempted to pull petitioner away from S during the sexual assault. Garbowski testified for the state, and he denied that the events took place and being present for them. During closing argument, defense counsel argued that, if the jury had reasonable doubt as to whether Garbowski was present during S's assault, then the jury must have reasonable doubt about the entirety of S's and M's testimony, including whether they were sexually assaulted. The state objected to that argument, and the trial court sustained the objection. The trial court explained to defense counsel that his argument was an incorrect description of the reasonable doubt standard. During that explanation, the trial court described Garbowski as a "tangential" witness. The trial court also told the jury that it must follow the court's instructions as to reasonable doubt.

On appeal, petitioner argues that the trial court's responses to the state's objections "created an unacceptable risk that the jury's decision would be influenced by the

---

[1] In this opinion, we discuss Article I, section 11, of the Oregon Constitution. For the same reasons articulated in that analysis, we likewise conclude that the post-conviction court did not err under the Sixth Amendment. *See Montez*, 355 Or at 6 (noting that we interpret and apply the state and federal standards independently of one another). Petitioner does not advance any argument suggesting that, even if his trial counsel's performance was not constitutionally inadequate under the Oregon Constitution, it fell below federal constitutional standards.

court's attitude toward petitioner," and the jury would disregard a critical defense witness as "tangential." Petitioner relies on *Maney v. Angelozzi*, 285 Or App 596, 397 P3d 567 (2017), to argue that his counsel performed inadequately by not addressing the court's interruptions and comments. In that case, the trial court, without any objection from the state, "repeatedly interrupted defense counsel," and it interrupted the examination of two witnesses to admonish them and ask additional questions. *Id*. at 598, 616-17. The trial court had "intervened on behalf of the state, weakened the credibility of a significant defense witness, afforded preferential treatment to a state's witness, and conveyed the court's apparent belief that defense counsel was an unreliable and perhaps untrustworthy advocate." *Id*. at 613. We concluded that the trial court's actions "would have alerted any reasonable attorney that defendant's right to a fair trial was at risk and there was a need to for counsel to bring that risk to the court's attention through an appropriate motion." *Id*.

This case is distinguishable from *Maney*. In this case, the prosecutor objected to defense counsel's arguments about the reasonable doubt standard, so the trial court had reason to respond to that objection. *See id*. at 616-17 ("[N]one of the court's more notable criticisms were prompted by objections from the state, and the transcript reveals relatively little reason to object, much less anything that would seem to justify the court's unilateral decision to repeatedly admonish counsel in front of the jury."). The trial court corrected trial counsel's argument as to the reasonable doubt standard, and it told the jury that it must follow the court's instructions. None of those actions or statements would have alerted defense counsel that petitioner's right to a fair trial was at risk.

We conclude that the post-conviction court did not err in concluding that petitioner did not prove that his trial attorney failed to exercise reasonable professional skill and judgment. When read in context, the record indicates that the trial court sought to clarify that the jury must look at the evidence as a whole, and that the jury could determine, beyond a reasonable doubt, that S had been sexually assaulted even if they also determined that they had a

reasonable doubt as to whether Garbowski was present or tried to stop the assault. Thus, the trial court's statements during defense's closing argument did not deny petitioner a fair trial, and, under the circumstances of this case, the post-conviction court did not err in ruling that defense counsel did not fail to exercise reasonable professional skill and judgment, and petitioner was not entitled to post-conviction relief.

*Jury Instruction.* Petitioner argues that trial counsel was inadequate for failing to ask the court to instruct the jury that it had to "consider separately the evidence on each count and determine guilt or innocence separately on each count." In the post-conviction proceeding, trial counsel testified that the fact that M and S were friends and "had discussed the allegations against [petitioner] together before going forward to police *** was *evidence that [he] strategically wanted the jury to hear*." (Emphasis added.) Trial counsel "wanted the jury to consider [M's and S's] testimony to police in concert to underscore [his] argument that it was fabricated and rehearsed," and he "spent considerable time in [his] closing argument addressing all the reasons why their version of events as they told police did not make any logical sense." The post-conviction court determined that trial counsel made a reasonable strategic decision to not request the instruction, because it "would have worked against the central defense theory of the case." According to the post-conviction court, "[h]ad the jury been asked to consider the charges separately, trial counsel would not have been able to make the arguments he made to the jury."

On appeal, petitioner argues that trial counsel was deficient because his conscious decision not to request the limiting instruction was "premised on a misapprehension of the law, rather than an appropriate consideration of the risks and benefits of seeking the instruction." *See Delgado-Juarez*, 307 Or App at 93 ("[I]f defense counsel's cost-benefit analysis is based on an erroneous or incomplete understanding of the law, the resulting choice, much like a choice based upon a flawed perception of the facts, is unlikely to be the product of competent representation."). Petitioner argues that the instruction would not have limited counsel

from making the arguments that he made in closing; rather, the instruction would have limited the jury from using the state's evidence for propensity purposes.

In response, the superintendent argues that trial counsel made a reasonable strategic decision to not request such an instruction because that instruction would have worked against the central defense theory. In addition, the superintendent argues that petitioner "specifically instructed" counsel that he did not want a split verdict, he specifically instructed defense counsel that he wanted an "all-or-nothing strategy," and counsel said that he went along with that directive, so counsel did not ask the jury to consider the cases separately.

We agree with the superintendent. First, in his post-conviction petition, petitioner alleged that trial counsel should have requested an instruction for the jury to "consider separately the evidence on each count." That instruction would have limited trial counsel's theory of the case—that the evidence related to S and M, when considered together, showed that the complainants colluded in their allegations against petitioner. *See Delgado-Juarez*, 307 Or App at 95 ("[T]here are circumstances in which an attorney may make the deliberate choice not to request a limiting instruction."). Second, we have articulated that "[a] petitioner cannot prevail on a claim for post-conviction relief if the attorney merely carried out tactical decisions at the directions of the client in furtherance of the client's goals for litigation—goals that the client now regrets." *Evans v. Nooth*, 300 Or App 331, 338, 452 P3d 1026 (2019), *rev'd on other grounds*, 368 Or 159 (2021). The post-conviction court found defense counsel's testimony to be credible, defense counsel stated that petitioner "specifically instructed" counsel that he did not want a split verdict, and counsel believed that requesting the instruction could have put petitioner at risk for that result. Thus, we conclude that the post-conviction court did not err in its determination that petitioner's counsel did not fail to exercise reasonable professional skill and judgment when he did not request a limiting instruction to limit the evidence for each count.

*References to "Victims."* Petitioner argues that his counsel was inadequate for failing to move to prohibit witnesses

and the prosecutor from referring to the complainants as "victims" and for failing to object to those references during trial. The post-conviction court concluded that petitioner did not prove that all reasonable trial attorneys would have objected to the prosecutor and witnesses using the term "victim," because his trial occurred five months prior to the Supreme Court's decision in *State v. Sperou*, 365 Or 121, 442 P3d 581 (2019), in which the Supreme Court determined that such references constitute impermissible vouching. The post-conviction court also noted that *Sperou* did not prohibit prosecutors from using the term "victim" in all circumstances. *Id.* at 135.

"[A]n appellate decision issued after petitioner's trial cannot, on its own, demonstrate that trial counsel failed to exercise reasonable professional judgment in failing to spot a debatable legal issue." *Antoine v. Taylor*, 368 Or 760, 769, 499 P3d 48 (2021). To obtain post-conviction relief, petitioner "must show that, based on the state of law as it existed at the time of his trial, trial counsel exercising reasonable professional skill and judgment would have made the argument that any references to [the complainant] as a 'victim' at trial constituted unlawful vouching." *Curry v. Highberger*, 326 Or App 259, 269, 531 P3d 702, *rev den*, 371 Or 511 (2023). At the time of petitioner's criminal trial, the Supreme Court had granted the petition for review in *Sperou* based on two questions: whether the trial court erred in admitting other-acts evidence, and whether the trial court erred in allowing witnesses and the prosecutor to describe the complainant and other witnesses as "victims." 365 Or at 123. Thus, the vouching rule from *Sperou* was not the law "as it existed at the time" of petitioner's trial, but the Supreme Court had taken the issue under advisement.

Before *Sperou*, and at the time of petitioner's criminal trial, the state of vouching law was *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010). In that case, a nurse testified at trial that she had diagnosed the complainant as having been sexually abused, and the nurse testified that the complainant's responses during the forensic interview were "very clear and spontaneous," "consistent," and "compelling." *Id.* at 353. The Supreme Court concluded that the

nurse improperly vouched for the child's credibility because, "given the lack of physical evidence of abuse," the nurse's statement "necessarily was based on her assessment of the child's believability." *Id*. at 362. Thus, *Lupoli* related to witness testimony that vouched for the credibility of a complainant based on the witness's diagnosis of a child having been sexually abused, and it did not focus on the witness's use of the term "victim." *Id*. *Sperou* extended the rule against vouching to witnesses referring to complainants as "victims," and it also applied that rule to prosecutors' uses of the term "victim" in some circumstances. The court in *Sperou* "observed that a prosecutor's use of the term 'victim' entails a 'qualitatively different' analysis" than the rule articulated in *Lupoli*. *Curry*, 326 Or App at 270 (quoting *Sperou*, 365 Or at 137); *see also id*. at 273 (Aoyagi, P. J., concurring) ("*Sperou* effected a significant extension of the principle animating *Lupoli*[.]").

Although *Sperou* was under advisement at the time of petitioner's trial, petitioner did not submit any evidence to the post-conviction court to show that, at the time of his trial, criminal defense attorneys were making those types of vouching objections to witnesses' or prosecutors' references to "victims." *See Hagberg v. Coursey*, 269 Or App 377, 381, 344 P3d 1118, *rev den*, 358 Or 69 (2015) (noting that the petitioner had submitted evidence from an expert witness, a criminal defense lawyer, who testified that the legal issue "was a subject of discussion within the criminal defense bar, and that defense lawyers were making motions pursuant to that rule in other cases"); *Antoine*, 368 Or at 780 (the petitioner did not present "any evidence" that his reading of the law "was widely shared or even that any other attorney had read [the law] in that manner prior to [the appellate court decision]"); *but see Williams v. Laney*, 321 Or App 1, 4, 514 P3d 1120 (2022), *rev den*, 370 Or 714 (2023) (before *Sperou* was decided, the petitioner's defense counsel was "aware of the potential prejudicial effect of referring to the five teenaged girls as 'victims,'" and counsel objected to those references several times throughout trial). Petitioner also did not show that trial counsel should have understood that the Supreme Court was going to decide *Sperou* on the vouching issue when it took the case taken under advisement on two

distinct issues. *See Mesta v. Franke*, 261 Or App 759, 781, 322 P3d 1136 (2014) ("[A]lthough the Supreme Court had indicated that the OEC 403 issue might be considered in *Southard*, there was nothing to particularly indicate that the court was going to decide the case on that issue, let alone decide it in a manner favorable to petitioner.").

The majority of the references to "victims" that petitioner cites in his brief relate to the *prosecutor's* characterization of the complainants when examining witnesses and in closing arguments. But *Sperou* "extended the principles underlying its decision in *Lupoli* to statements made by a prosecutor," *Curry*, 326 Or App at 270, and defense counsel was not inadequate for failing to anticipate that the prosecutor's references might be disallowed under *Sperou*. In addition, the rule against prosecutorial uses of the word "victim," as articulated in *Sperou*, is nuanced. Prosecutors are permitted to argue about witness credibility, but prosecutors cannot make arguments as to their own beliefs about the complainant. *Sperou*, 365 Or at 135 ("In light of a prosecutor's dual responsibilities to refrain from inflammatory remarks and personal commentary, on the one hand, but to be an advocate for the state's cause, on the other, it is difficult to state a categorical rule regarding a prosecutor's use of the term 'victim' to describe a complaining witness where victimhood is disputed."). That nuance within the prosecutorial vouching rule would be particularly difficult for defense counsel to anticipate before *Sperou*, and the fact that prosecutors are allowed to argue their case makes petitioner's argument that every reasonable counsel would have made an objection untenable.

We have also reviewed the instances in the record in which witnesses used the word "victim," and we conclude that those instances did not indicate that petitioner's trial counsel was inadequate for failing to object. The witnesses' use of the word "victim" mostly entailed witnesses describing their work investigating sex abuse crimes in the general sense, rather than referring to the specific complainants in this case as "victims." For example, a property evidence clerk testified that the protocol for sexual assault reports includes "contacting the victim;" a detective described "pretext calls,"

which require that "a victim" call the suspect to see if the suspect will provide incriminating statements over the phone; and another detective testified that he works for the "special victims unit." Those statements did not refer to the complainants as "victims," so they do not run afoul of the vouching rule in *Sperou*. *See id*. at 132 ("[T]he use of the term 'victim' *to refer to the complaining witness or other witnesses* * * * conveys the speaker's belief that the accusers are credible." (Emphasis added.)). In addition, the witnesses also referred to complainants as "victims" based on the prosecutor's initial characterization. *See Curry*, 326 Or App at 274 (Aoyagi, P. J., concurring) ("[I]t is fairly apparent that the witnesses were simply accepting the prosecutor's characterization for purposes of answering his questions * * * and occasionally repeating his phrasing * * * rather than expressing their own views on whether the complainant was 'the victim.'"). For example, one of the detectives testified that he did not talk to anyone else "as far as victims go." The detective gave that answer in response to the prosecutor's question about whether, after reading a police report, the detective determined that there was another victim. Those references likely did not express the witnesses' "*own views on whether the complainant was 'the victim,'*" because they came in response to the prosecutor's characterization. *Id*. at 274 (Aoyagi, P. J., concurring) (emphasis added). The few remaining uses of the term "victim" likewise were not the type of references where all trial counsel, exercising reasonable professional skill and judgment, would have objected, particularly before the Supreme Court's decision in *Sperou*.

Thus, based on the state of the law at the time of his trial and the evidence that petitioner submitted to the post-conviction court, petitioner did not show that trial counsel failed to exercise reasonable professional skill and judgment when he did not object to references to M and S as "victims." *See id*. at 269-70 (noting that the law "did not obligate petitioner's trial attorney to object to the prosecutor's and eyewitness's use of the term 'victim' at trial in 2015 or even suggest that such an objection might be successful"). Because "we must make every attempt to not analyze counsel's performance with the benefit of hindsight," *Mesta*, 261 Or App at 782-83, we conclude that the post-conviction court did not

err in determining that trial counsel did not fail to exercise reasonable professional skill and judgment when he did not object to references to the complainants as victims.

*Failing to Ask a Witness About M Hugging Petitioner.* Lastly, petitioner argues that trial counsel failed to exercise reasonable skill and judgment when he failed to elicit testimony from a witness that she saw M hug petitioner immediately after the incident in which M alleged that petitioner orally sodomized her. The post-conviction court determined that petitioner failed to prove that the trial counsel was unreasonable or that all reasonable attorneys would have asked that question, because counsel made a split-second strategic decision in the middle of trial to not ask the witness a leading question.

We conclude that the post-conviction court did not err. We "will not second-guess a lawyer's tactical decisions in the name of the constitution unless those decisions reflect an absence or suspension of professional skill and judgment." *Gorham v. Thompson*, 332 Or 560, 567, 34 P3d 161 (2001). Trial counsel made a tactical decision not to ask the witness about whether M hugged petitioner. Counsel testified that he thought the jury would believe that he "rigged all [of his] witnesses" if he asked the leading question. In addition, the post-conviction court noted that "[w]itnesses have been known to change their accounts while on the stand, so it was reasonable for trial counsel to move on after trying to ask [the witness] about it generally." Those are valid concerns, and we will not second-guess trial counsel's tactical decisions in this case because they "are based upon reason and professional judgment." *Krummacher*, 290 Or at 881.

Affirmed.